CLARENCE E. LUTHER, Appellee, v. JOHN ULLRITCH, Appellant.

EVIDENCE:   Res Gestae—Self-Serving Declarations.   What a defendant in replevin may have said, subsequent to the execution of the writ, to the officer serving the writ, and in denial of plaintiff's right to the replevined property, is no part of the *res gestae*, and wholly incompetent.

APPEAL AND ERROR:   Harmless Error—Exclusion of Questions Non-Explanatory of Nature of Testimony Sought.   Harmless error results from the exclusion of questions which in no manner reveal the nature of the expected answers.

APPEAL AND ERROR:   Harmless Error—Excluding Fact Otherwise Appearing in Record.   Error may not be predicated on the refusal of the court to permit a certain fact to be shown, when such fact is manifest from other portions of the record.

REPLEVIN:   Evidence—Care of Replevined Property.   Evidence of the care given the replevined property while in the custody of plaintiff may be material on the issue of defendant's claim to the property and his counterclaim for damages.

EVIDENCE:   Opinion Evidence—Identity of Persons and Things. Whether property replevined is the identical property which a witness had just recently purchased, is a question of fact, and not of unallowable conclusion.

WITNESSES:   Examination—Cross-Examination by Court—Rejected Issue.   No error results from a quite rigid cross-examination

of a witness by the court on an issue which is ultimately wholly excluded from the case.

**ACCORD AND SATISFACTION:** Nature and Requisites—Accord
7 without Satisfaction. Principle recognized that an accord followed by no satisfaction constitutes no defense to an action on the original demand.

**APPEAL AND ERROR:** Review—Presumptions—Absence of In-
8 tructions. In the absence of the instructions, it must be presumed that the court properly presented the issues, and that the jury properly complied therewith.

*Appeal from Buena Vista District Court.*—N. J. LEE, Judge.

JANUARY 19, 1918.

ACTION in replevin for the possession of certain described steers and heifers, alleged to be wrongfully detained by the defendant. There was a judgment for plaintiff, and defendant appeals.—*Affirmed.*

*James De Land* and *C. H. Wegerslev,* for appellant.

*Faville & Whitney,* for appellee.

WEAVER, J.—The plaintiff, the defendant, and one Ruby, are farmers residing on separate farms in the same general neighborhood in Buena Vista County. Ruby was about to hold a public sale of property on his farm, and the defendant, Ullritch, having a considerable number of young cattle, obtained permission to offer a part of his herd for sale at the same time and place. Among the animals belonging to Ullritch were, as is claimed, ten two-year olds, five steers, and five heifers; and these, being put up for sale, were struck off to the plaintiff, Luther. Not being prepared to take them away that evening, plaintiff paid for the cattle, and left them with Ruby for the night. On the following morning, he returned with a helper, and undertook to drive the cattle home. Unfortunately, the road taken by him led directly past the defendant's farm, where the cattle had previously been kept, and on reaching that place, they broke

away from their drivers and into the inclosure, where they mingled with others of their kind belonging to defendant. The plaintiff undertook to sort out and regain possession of his stock, when a dispute arose between the parties as to the identity of some of them.   At that time, the chief difference seems to have been over a certain red heifer, which defendant insisted was one of the number he sold plaintiff, and plaintiff denied having purchased, or having ever seen it before that morning.   Concerning this animal, and perhaps affording some light upon the merits of the controversy, we quote from the abstract a part of defendant's testimony, saying, however, by way of preface, that his counsel suggest that he is a German, using the English language imperfectly, and some allowance ought to be made on that account in considering his statements, which, counsel say, "might otherwise seem peculiar."   After speaking of the mingling of the cattle, he proceeds:

"We then went around the barn, and there was some of them there where I had been feeding.   Then we tried to sort them out, and I had them all sorted out for him.   And then there was one he claimed only weighed 400 pounds.   He says, 'I don't want that one, it wasn't in the bunch.'   And I says, 'It was.'   He said before he would take that one, he would leave them all.   I said, 'Suit yourself about that.'   The one he objected to, and said wasn't on the sale, and only weighed about 400 pounds, was a red heifer, two years old.   It was awful poor, and the hogs had been after it, you know, when I bought it at Fauglan's sale, and eat off a piece behind. That was the reason it was so poor.   It was a good heifer, though, just the same.   That is the one.   And when he bought it, it wasn't so poor,—it was a good one.   It weighed about 500 pounds."

Plaintiff's version of the same incident is very different. He says:

"He kept saying, 'I will pick out one of them that you

got.' He did not say which one he would pick out. He re-
ferred or pointed to a heifer that was sickly like, and only
weigh about 400 pounds. She was up by the barn, standing
there shivering. This was not one that I bought at the sale.
I never saw that one there. He says, 'You will take that one
there or none.' 'Well,' I says, 'none it will be for today, but
I will get them some time.' "

On the following day, the plaintiff returned to defend-
ant's place, and the effort to select the ten head of cattle was
resumed, without coming to any agreement. It is plain-
tiff's claim that defendant insisted that he alone should
make the selection. At this time, too, dispute arose as to the
identity of one or two other animals. For example, there
were two white-faced heifers in the herd. One of these, which
was afterward taken under the writ of replevin, defendant
insists was not in the number sold, and he points out an-
other of similar description as being the one belonging
to plaintiff. To identify the heifer, he produces as a wit-
ness the man who raised it, and who was present at the
Ruby sale. The witness corroborated defendant's claim, but
says of the two animals:

"They looked very much alike. About the same size,
same color, and same general appearance. Had I not raised
one of them, it would have been hard for me to tell them
apart. * * * The distinguishing mark is just a little
spot of red that is in one's face that isn't in the other. A
little spot in the left side of the left cheek."

The dispute remaining unsettled, the plaintiff began this
action in replevin. The writ was served by taking the ten
head claimed by the plaintiff. The petition is in the usual
form. The defendant denies plaintiff's ownership of the
cattle taken under the writ. In a second count of his an-
swer, he recites the fact of the mingling of the cattle and the
inability of the parties to agree upon the identity of those
belonging to plaintiff, and alleges that the dispute was ad-
justed and settled between them by an agreement to can-

cel or rescind the sale, the defendant to retain the cattle and the plaintiff to receive back the purchase money paid by him. In a third count, defendant admits that seven of the animals taken under the writ were of those sold to plaintiff, but claims that the other three so taken belong to him, and asks judgment for their value. The jury appears to have found for the plaintiff on all the issues joined, and judgment was entered accordingly.

I. The error first assigned by counsel as affording ground for reversal is upon certain rulings relating to the admission of evidence. The defendant was testifying as a witness in his own behalf, and, his attention being directed by his own counsel to the circumstances attending the taking of the cattle by the sheriff under the writ, he said:

1. EVIDENCE:
res gestae:
self-serving
declarations.

"The day the sheriff came to get the cattle, all I said to Luther was, 'Be sure to pick your cattle.' After the cattle were picked out, and they were taking them away, the sheriff was there a little longer, and I had a little talk with him. Q. To refresh your recollection, Mr. Ullritch. Did you say anything to the sheriff before they took the cattle away, and while Mr. Luther was still there, in regard to any particular ones they had picked out there? A. No, sir. Q. You did have some talk with the sheriff just after Luther and his hired man drove the cattle away? A. Yes. Q. And while the sheriff was still there on the grounds? And that talk was in relation to these cattle? A. Yes, it was. Q. Now I will ask you to tell what that talk was with the sheriff at that time. (By Mr. Faville: That is objected to as immaterial, and hearsay. It couldn't possibly bind Luther. By Mr. DeLand: If the court please, this question is asked in this way, after showing the connection, upon the principle that the sheriff was there as the agent of the plaintiff and sent there for this purpose, and consequently the talk had at that time was part of the *res gestae,* and was part

of the proceedings that were going there on the part of the sheriff in connection with his duties for which they sent him there as their agent. By the court: Sustained. Defendant excepts.)"

Counsel say, in explanation of this assignment, that the sheriff went to the defendant's farm, taking with him the plaintiff; that the sheriff, instead of acting independently and using his own judgment, turned the plaintiff loose to select his ten head of cattle out of a herd of sixty; and that, because of this action, whatever was said and done there by the sheriff or by others in his presence or by his directions, and any conversation had with the sheriff relating to the cattle or their identity, was competent and material evidence. With this as the groundwork of their claim, counsel say that, the cattle having been selected by the sheriff and turned over to plaintiff, who drove them away, it is competent, in support of the defense, to show what the defendant immediately thereafter said to the sheriff, who had not left the premises. The proposition needs but little more than its statement to demonstrate its unsoundness. In the first place, the question contains nothing whatever to indicate in any way the nature of the evidence to be elicited, except that it was "in relation to these cattle," or "in regard to any particular ones they had picked out." What was said is not suggested, and how it could be competent or material is not explained, and indeed does not seem explicable, upon any sound theory of the law of evidence. The suit had already been begun: the one thing to be tried and determined was whether the cattle claimed by plaintiff and taken under the writ were the identical cattle which plaintiff had purchased and paid for. Nothing which the defendant could then say to the sheriff or to any other person could be competent evidence in his own behalf on that issue. Whether the sheriff relied upon the plaintiff

2. APPEAL AND ERROR: harmless error: exclusion of questions non-explanatory of nature of testimony sought.

in selecting the animals to be levied upon, or whether he called upon defendant for any help or information, is wholly immaterial.   He did take and turn over to plaintiff ten head of cattle, and if any of these were owned by defendant, or if any mistake was made in selecting them from the larger herd, then so much the worse for plaintiff when the cause should come for trial.   The burden was on the plaintiff to prove his property by competent evidence.   This he could not do by proving what he told the sheriff or any other person, and no more could the defendant disprove such claim by proving his own statements.   The ruling was clearly correct.

3. APPEAL AND ERROR: harmless error: excluding fact otherwise appearing in record.
The same is to be said of the further complaint that the court ruled out certain other testimony by the defendant as to an interview between him and plaintiff after the writ was served.   It appears in the record that defendant was at first permitted to testify that, after the cattle had been taken under the writ, he went to plaintiff's farm, and demanded of plaintiff the right to see the cattle and to mark them by clipping them with a pair of shears which he produced, so that the animals might thereafter be identified; and that plaintiff refused to allow it. Defendant was then asked by counsel to state what he "had the scissors there for," and upon objection by plaintiff, the answer was excluded.   This is assigned for error, because it appears that plaintiff, in his testimony, had mentioned the coming of defendant on that occasion, and said that defendant "jumped out of his buggy with a big pair of shears." But defendant had explained why he had provided himself with the shears.   For reasons already stated, the whole matter of that particular meeting is of no consequence; and, had the whole story on both sides been admitted or excluded, it could neither have strengthened the case of one of the litigants nor weakened the other.

4. REPLEVIN:
evidence:
care of re-
plevined prop-
erty.

The plaintiff put in evidence, over the objection of the defendant, testimony as to the weight of the cattle and the manner in which he had kept and fed them since they were taken by the sheriff. It is said that this was immaterial, and we are inclined to the view that this is correct, unless it be that, as defendant had set up a counterclaim for damages for the taking of at least a part of the cattle, their condition and feeding might possibly become of some importance, in the event that the jury had found that some or all of the animals were the property of the defendant. But if there was any error in admitting the evidence, it was clearly without prejudice. The jury assessed no damages in plaintiff's favor, and the testimony in question could have been given no consideration upon the question of the identity of the animals.

5. EVIDENCE:
opinion evi-
dence: iden-
tity of per-
sons and
things.

It is next objected that the court erred in permitting the plaintiff to testify that the ten head of cattle taken under the writ were the identical cattle which he had purchased at the sale. The objection is that this is permitting the witness to testify to a mere opinion. There is no merit in such objection. Identity of persons and things is, in a sense, a matter of opinion. It is also a fact, a matter of personal knowledge, and we think counsel will find it difficult to point to any reputable authority which holds it incompetent for a witness to identify property which he claims to own, and with which he claims to be familiar.

Other evidence offered by plaintiff in rebuttal was objected to as being properly matter in chief, but was allowed to go to the jury. The order of introducing evidence is controlled by the discretion of the trial court, and nothing in this case shows any abuse of that discretion.

II. Appellant makes serious complaint

**6. WITNESSES:**
  **examination:**
  **cross-examina-**
  **tion by court:**
  **· rejected issue.**
that the trial court entered upon a cross-examination of the defendant, who testified as a witness in his own behalf. It is conceded that the matter so called out was not improper, but that the cross-examination was quite rigid and insistent, and that the effect of it must have been to prejudice defendant with the jury.

There is one sufficient answer to this criticism. The cross-examination related wholly to the alleged settlement and agreement to rescind the sale and return the purchase money, and, as we shall hereafter note, there is no competent evidence on which the jury could find that any such settlement or compromise was ever had.

III. The defense based on an alleged

**7. ACCORD AND**
  **SATISFACTION:**
  **nature and**
  **requisites:**
  **accord with-**
  **out satis-**
  **faction.**
settlement is, as we have already said, without sufficient support in the record. It is conceded that, before the suit was begun, there was some talk between the parties of allowing the cattle to be retained by the defendant, who should return plaintiff's purchase money. But it is not pretended that any such agreement was ever performed by either party, or that either ever tendered performance on his part to the other. An accord followed by no satisfaction constitutes no defense to an action brought upon the original demand.

Moreover, the instructions given by the

**8. APPEAL AND**
  **ERROR: re-**
  **view: presump-**
  **tions: ab-**
  **sence of in-**
  **structions.**
trial court have not been brought to this court in the abstract, and it will be presumed that the court did not err in submitting the case to the jury. It will also be presumed that the verdict of the jury was in accordance with the instructions.

IV. The controversy is one of fact, and the facts are mostly of a petty and trifling character. Whatever may be

thought of the comparative merits of the claims put forth by the parties, they have been settled by the jury in plaintiff's favor, and there the matter should end. We can understand, perhaps, the attitude of a mother who refuses to be satisfied with any substitute for her own child. Her child may be less beautiful and less perfect than the one offered in its stead; but it is her child, and not the child of another which she wants; and if it be denied, she will not be comforted, and all human hearts sympathize with her. There is also something in our common human nature which contemplates with a humoring smile the infatuation of the very young man who is convinced beyond argument that the particular dimple which plays upon the cheek of his particular fair one is without equal or rival in a world of beauty; but it is beyond the bounds of charity to find reason or excuse for two grown American farmers who call down the vengeance of the law upon each other, and spend their time, money, and efforts for months, and perhaps years, over the difference between two bovine quadrupeds, exactly alike in size, quality, age, color, and general appearance, and without any distinguishing mark except a small red spot on the left side of the left cheek. Possibly the determination of each party to shift upon the other the ownership of the red heifer with a history of misfortune—the one which was "awful poor, but was a good one though"— shows a little more substantial ground of dispute; but even here the margin of value between the animals could not have exceeded a very few dollars—not more, perhaps, than would be sufficient to supply the cigars the lawyers on either side would consume in smoke during the trial. Such things are not conducive to the cause of good citizenship, and should be discouraged.

In so far as the case has any merit, it turns wholly upon the facts from which the identity of the animals in question is to be found; and this was, as we have said, a matter for

the jury alone.   The verdict is conclusive upon us, as well as upon the parties.

The judgment below will, therefore, be—*Affirmed.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.