ANTON FARWARK, Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

**RAILROADS:** Federal Employers' Liability Act—Assumption of Risk, 1  Under the Federal Employers' Liability Act, an employee does not assume the risk of an injury due to the negligence of a fellow servant.

**RELEASE:** Fraud—Avoidance. A written release of all damages suf-2  fered by an injured party is fraudulent and void when it was in fact mutually intended as a receipt for wages only, and was signed by the injured party without negligence on his part; and the failure of the injured person, who was himself unable to read, to have such instrument read to him does not necessarily constitute negligence *per se.*

**CONTRACTS:** Signing—Negligence. Principle reaffirmed that it is in-3  cumbent upon a person who executes an instrument to exercise reasonable care to ascertain its contents.

**TRIAL:** Instructions—Exceptions—Lack of Specification. An excep-4  tion which does not present the proposition embodied in the instruction excepted to cannot be considered on appeal.

**TRIAL:** Instructions—Undue Emphasis. An instruction which places 5  undue emphasis on some particular fact or feature of a case is properly refused.

Headnote 1:  39 C. J. p. 675.  **Headnote 2:**  13 C. J. p. 372; 34 Cyc. p. 1060.  **Headnote 3:**  34 Cyc. p. 1060 (Anno.)  **Headnote 4:**  3 C. J. p. 927.  **Headnote 5:**  38 Cyc. p. 1677.

Headnote 1:  49 L. R. A. (N. S.) 60, 61; L. R. A. 1915C, 65; 18 R. C. L. 830, 831.  **Headnote 2:**  11 L. R. A. (N. S.) 199, 200; 23 R. C. L. 387.  **Headnote 3:**  6 R. C. L. 624.  **Headnote 4:**  14 R. C. L. 809.

*Appeal from Dubuque District Court.*—D. E. MAGUIRE, Judge.

JANUARY 11, 1927.

Action under the Federal Employers' Liability Act, to recover damages for personal injuries. Verdict and judgment for the plaintiff, and the defendant appeals.—*Affirmed.*

*Brown, Lacy & Clewell* and *Hughes, Taylor & O'Brien,* for appellant.

*John J. Kintzinger,* for appellee.

STEVENS, J.—The injuries of which appellee complains were received June 25, 1923. On that date, he was employed by appellant as a section hand, and, at the time the injuries were received, was engaging with several co-employees in unloading a steel rail from a push car. It was the custom of the employees, when they arrived at the place where rails were to be unloaded from the push car, to divide on each end of the car, and to take hold of and lift the rail and rest it on the top of the wheels. This was done in the present instance. After the rail was raised and placed on the wheels, the several employees took hold thereof with their hands, and waited for the signal of the foreman to "roll it." The workmen stood between the rails, when rolling the rail. When the signal was given by the foreman, by a simultaneous co-operative effort the employees rolled and pushed the rail onto the ground outside of the track. In some way, not explained by the evidence, appellee did not stand between the rails when the rail in question was unloaded, but stood with one foot on the track, or outside thereof, in such a way that the rail struck his leg, inflicting the serious injuries of which he complains.

The negligence charged in the petition (and the plaintiff so testified) is that:

"While plaintiff and other employees had ahold of a rail, awaiting for said signal, and that, without any warning or the giving of said signal, said rail was suddenly dropped from said car on plaintiff's leg, knocking him down."

The following propositions are argued by appellant, for reversal: (a) That appellee assumed the risk of the accident, as

a usual, ordinary, and apparent risk of his employment; (b) that the evidence does not sustain the allegation of the petition of negligence, or that same was the proximate cause of the accident; (c) that appellant settled with appellee in full for all damages suffered, for which he signed a release; (d) that appellee failed to make out a prima-facie case of fraud, in avoidance of said release; and (e) that there was error in instructions given and in the refusal of the court to give a requested instruction. A motion which embodied all of the propositions stated above was filed by appellee at the close of the evidence, and was overruled by the court.

I. It is not technically accurate to say, as claimed by appellant, that the negligence charged in the petition was the failure of the foreman to give the customary signal to roll the rail.

1. RAILROADS: Federal Employers' Liability Act: assumption of risk. The real negligence charged is that it was rolled or dropped by the rest of the workmen, without the signal, or before the signal was given. Under the Federal Employer's Liability Act, an employee does not assume the risk of an injury due to the negligence of a fellow servant. *Currtwright v. Chicago, M. & St. P. R. Co.*, 197 Iowa 1216. If, therefore, the proximate cause of the injury was the negligence of the several fellow servants who had hold of the rail, the doctrine of assumption of risk is not applicable to this case. All of the co-employees who were called as witnesses testified that the usual signal was given, and the rail rolled in obedience thereto, in the usual and ordinary manner. Contributory negligence is not here a defense, and the right of appellee to have the issue of negligence submitted to the jury is not affected by the failure on his part to exercise proper care. The failure of appellee to observe the custom of standing between the rails is not satisfactorily explained by him. The question of appellant's negligence was, however, we think, clearly for the jury.

II. Appellant in its answer set up a plea of release and settlement. To this defense appellee replied that the release was obtained by the claim agent of appellant, by fraud and deceit, while appellee was in the hospital, suffering from his injuries. The only persons present at the time of the procuring of the release, which is a printed form used generally by appellant, were appellee and the claim agent.

2. RELEASE: fraud: avoidance.

The release is dated February 6, 1924, which was more than seven months after the injuries were inflicted. The evidence shows that appellee was up and around the hospital, but was still confined to his room. He was fully dressed, at the time the release was signed. It is not claimed that he was then suffering pain, or that he was in any way incompetent, because of his injuries, to transact business. Appellee was born in Germany, where he attended school until he was 14, and came to this country at the age of 31. He was 62 at the time of the trial. He testified that he could not read English, and that he signed his name as he was taught to sign it in Germany. No part of the hospital bill had been paid, nor had appellee received anything from the company. Nothing had been previously said to appellee by the claim agent or any other representative of the company about a settlement, but it is claimed that appellee inquired of the doctor for the claim agent. The testimony of the claim agent as to what was said and done tends strongly to negative appellee's charge of fraud.

The real question here is: Did appellee make out a prima-facie case of fraud in avoidance of the release and settlement? If he did, a question of fact for the jury was presented on this issue. The release signed by appellee recites that it is in full of all damages, whether the existence, character, extent, or duration thereof was known or unknown. The sum paid, as shown by the release, was $400. In addition to the above amount, the company paid appellee's hospital bill, which amounted to $529.10, and also the doctor's bill. These, as stated, are not mentioned in the release. Appellee testified that the claim agent told him, at the time the release was signed, that the company wanted to get out of the hospital expenses; that it would pay him $300, and that would keep him until June, when, according to the statement of the doctor, he would be able to go to work. Appellee said that he told the agent that $300 would not be enough for the next four or five months; that he "wanted a good warm room and a 50-cent meal," and that he ought to have enough to pay his doctor, and for medicine; that the agent informed him that he could not give him more, but that he would consult the superintendent; that he took pencil and paper, and figured up the amount that would be due appellee as wages at $3.00 per day, if he were working; and that finally $400 was

agreed upon.  The release was signed in triplicate.  Appellee testified that he cannot read the English language, and that he signed the release with the understanding that it was a receipt for wages and expenses until June.  He had been accustomed to signing checks or vouchers for wages in two or three different places, and he testified that he thought what he signed was the same thing.

Appellee further testified that the receipt was not read over to him, and that, if he had known that it was a release in full, he would not have signed it.  He said that nothing was said in the conversation about a settlement, and that he did not understand that the $400 was intended as payment for his injuries. Appellee does not claim that appellant's agent made any statement as to the contents of the release, but does claim that the subject of settlement was not discussed at all, and that the conversation related only to the payment of wages, and of a sum sufficient to keep him until June, when he supposed he would be able to go to work.  Appellee further testified that the claim agent said he would give him light work at a crossing, or something of that kind.  The release, however, recited that "employment has not been promised as a condition of this settlement." The testimony of appellee refers to no affirmative statement by the claim agent that was false or untrue.  The deception, if any, was in the contents and effect of the instrument signed.  Appellee could not read the release, but he does not claim that he so informed the agent, or that he asked him to read it.  According to appellee's testimony, its contents were not discussed.  All that he did, upon his theory of the facts, was with the assumption that what he signed was a mere receipt for the amount paid.

If the settlement orally agreed upon was of wages and expenses of appellee until the first of June, and he was induced, without negligence on his part, to sign a release in full for all damages which he had suffered, supposing and believing the instrument to be a receipt for the amount paid, and for that purpose only, this would be fraudulent.  The case at this point is similar to *Jaques v. Sioux City Traction Co.*, 124 Iowa 257; *Stomne v. Hanford Produce Co.*, 108 Iowa 137 ; *Jeez v. McDonald Mfg. Co.*, 179 Iowa 193,—although these cases contain elements of fact wholly absent from the present case.

The remaining question to be discussed, then, is : Was appel-

lee guilty of unreasonable negligence in signing the instrument presented to him by the claim agent, without reading it himself or having it read to him by a disinterested person? Appellee, as shown by the evidence, was not wanting in intelligence, nor was he so far without experience as to have been wholly oblivious to the importance of the transaction or the nature of the instrument signed. He testified that he was accustomed to sign his name two or three times when he received his pay checks, and that he did not distinguish between that transaction and the one in question. The representative of appellant did nothing affirmatively to mislead or deceive appellee as to the terms of the instrument, except such as may be implied from the mere presentation of it to him for signature. The case would be much stronger if it were shown that the claim agent knew that appellee could not read English. The agent's testimony that he read it over to appellee and explained it to him goes no 3. CONTRACTS: signing: negligence. further than to present a question of fact for the jury. The rule in this state is that it is incumbent upon a person executing an instrument to exercise reasonable care and diligence to ascertain its contents. Ordinarily, however, if any care or diligence is shown, the question is for the jury. *Hopkins v. Hawkeye Ins. Co.*, 57 Iowa 203; *Providence Jewelry Co. v. Fessler & Sons*, 145 Iowa 74; *Shores-Mueller Co. v. Knox*, 160 Iowa 340; *Wallace v. Chicago, St. P., M. & O. R. Co.*, 67 Iowa 547; *Kilby v. Charles City W. R. Co.*, 191 Iowa 926; *Malloy v. Chicago G. W. R. Co.*, 185 Iowa 346; *Christensen v. Harris*, 190 Iowa 256; *James v. Fairall*, 154 Iowa 253; *Kelly v. Chicago, R. I. & P. R. Co.*, 138 Iowa 273.

It seems to us that the failure of appellee to have the instrument read over by a disinterested person, under the facts disclosed by appellee's testimony, was not negligence *per se*. He had been employed by the railway company for several years, was being treated by the company physician, the terms of settlement had been talked over and fully agreed upon, and it was not particularly unusual for him to assume that the instrument signed truthfully expressed the oral understanding. That he was dealing at arm's length with his employer may not have occurred to him. We think it was a question of fact for the jury to determine whether appellee was guilty of inexcusable negligence in signing the instrument without a definite understanding of its

contents.   The credibility of the witnesses is pre-eminently a question for the jury.   Notwithstanding the lack of corroboration of appellee's testimony at every point in the case, the jury had the right to accept his version of the accident, and also of the alleged settlement.   The burden establishing the fraud relied upon to avoid the release was upon the appellee, but this burden was met by a fair preponderance of the evidence in his favor.   *Ley v. Metropolitan Life Ins. Co.*, 120 Iowa 203; *Owens v. Norwood White Coal Co.*, 157 Iowa 389.

IV.   The court instructed the jury that:

"The signing of one's name to a written instrument at a time when settlements, either partial or complete, are being transacted, is a matter of serious importance, and should not be done without giving to such transaction the careful consideration which a person of ordinary prudence and caution under like or similar circumstances would give thereto * * * If plaintiff was careless and negligent of his rights, and did not act as an ordinary careful and prudent man would act under like circumstances, he cannot set the release aside, and your verdict should be for defendant."

4. TRIAL: instructions: exceptions: lack of specification.

The court then instructed the jury that they should take into consideration all of the facts and circumstances bearing on the transaction: that is, what, if any, representations were made, the subject of the settlement, whether appellee could read or write the English language, whether he so informed the agent, whether the instrument was read over to him, and every other fact and circumstance bearing on the transaction.   The exceptions preserved to this instruction were, in effect, that the court should have determined the question submitted as a question of law; that the instruction was confusing, rather than helpful; that it gave the jury unusual latitude in considering the questions involved, and operated to the prejudice of the defendant. Appellant also requested the court to instruct the jury that, if appellee had an opportunity to have the release read to him before signing it, either by the agent or by some other person. and no fraud was practiced upon him, to prevent the release from being read, but he chose to rely upon what the agent said to him, he was estopped by his own negligence from relying upon the fraud pleaded.   The exceptions to the refusal of the

court to give this instruction do not comply with Section 11495, Code of 1924, as interpreted by this court. *Anthony v. O'Brien*, 188 Iowa 802.

The exceptions to the instructions given do not raise the proposition embodied in the requested instruction, which, for want of proper exceptions, cannot be reviewed on this appeal.

5. TRIAL: instructions: undue emphasis.

We deem it proper, however, to say that, in our opinion, the instruction given was not vulnerable to the exceptions lodged against it, and that the requested instruction places undue emphasis upon the failure of appellee to have the receipt read to him, and overlooks other material facts relating to the transaction. It may be conceded that the matters presented for review are by no means free from difficulty, and that the questions of fact are exceedingly close. We conclude, however, on the whole record, that no reversible error is shown. The judgment is, accordingly,—*Affirmed*.

DE GRAFF, C. J., and VERMILION and MORLING, JJ., concur.

FAVILLE, J., takes no part.