T. L. THOMAS, Administrator, Appellee, v. T. E. CHARTER, Appellant.

No. 43933.

April 5, 1938.

Rehearing Denied September 30, 1938.

Carl F. Jordan, for appellant.

John D. Randall and R. S. Milner, for appellee.

Donegan, J.—On the 16th day of July, 1935, between 2 and 3 o'clock in the afternoon, the plaintiff's intestate, Raymond Lloy Thomas, was operating a motorcycle northward on highway No. 11, which runs along the city limits of the city of Cedar Rapids, Linn county, Iowa. Thomas was accompanied by a young lady who was riding on the rear of the same seat occupied by him. At a point approximately 700 feet south of where the accident here involved occurred, there is an ascending grade toward the northward, as the highway ascended a viaduct over some railroad tracks, and the highest point of this viaduct is approximately 635 feet south of the point where the collision here involved occurred. From this high point of the viaduct there is a five per cent descending grade northward to the point of the collision. Highway No. 11 is a paved highway, the paved portion being 18 feet wide. At the bottom of this descending grade to the northward there is a side road or driveway coming onto the paved highway from the west. This side road or driveway does not intersect the paved highway at right angles, and does not extend eastward beyond the paved highway. It comes into the paved highway at a sharp angle from the southwest, and it is necessary for automobiles traveling northward on the paved highway to make a very sharp turn in order to leave the highway and proceed into this side road or driveway. On the east side of the pavement, opposite the entrance of this side road or driveway, there is a garage which stands some distance back from

the pavement. Between this garage and the pavement there are two gasoline pumps, and the surface has been covered with gravel. It is claimed by the plaintiff that, as his decedent came over the viaduct and started down the grade to the northward, he was preceded by the automobile driven by the defendant; that, when the defendant reached a point about opposite the side road leading to the southwest, he turned his automobile to the right and onto the gravel surface in front of the garage; that, without signal or warning of any kind, he then turned toward the westward and across the pavement in front of plaintiff's decedent; and that, without any fault on the part of plaintiff's decedent, the motorcycle on which he was riding came in contact with the defendant's automobile while it was crossing the paved highway, and plaintiff's decedent received injuries from which he died within a few hours thereafter.

It is the claim of the defendant, on the other hand, that he descended the grade from the high point of the viaduct to the northward, driving at a reasonable rate of speed on the east half of the paved portion of the highway; that his destination was a house on the side road or driveway to the left of the pavement; that he slowed his car down to a speed of approximately three miles per hour, gave a signal by extending his left arm outward, looked backward up the grade toward the south, and saw no vehicle of any kind between him and the high point of the viaduct; that, without proceeding off of the east edge of the pavement at any time, he turned his car toward the left and across the highway in order to make the turn into the side road or driveway; and that, when his automobile had reached a point where the left front wheel was off of the west edge of the pavement and the right front wheel was about on the edge of the pavement, the motorcycle driven by plaintiff's intestate, which was traveling at a speed of 60 to 70 miles an hour, ran into the left side of his automobile, up the left front fender and over the hood thereof, turned a complete somersault, and landed on top of the plaintiff's intestate about 20 feet beyond and to the northward of the automobile.

The case was tried to a jury which returned a verdict for the plaintiff in the sum of $10,175. A motion for a new trial was overruled, on condition that the plaintiff remit $3,000 of the verdict rendered, and, upon plaintiff filing such remittitur,

judgment was entered in favor of the plaintiff for $7,175. From this judgment and from all adverse rulings, the defendant appeals.

Appellant has set out and argued 41 alleged errors upon which he relies for reversal. His brief and argument contains 150 pages and his reply brief and argument contains 63 pages. Manifestly, this court cannot consider and discuss each of the alleged errors relied upon for reversal in detail.

■■■ I. Appellant's first allegation of error is, that the court erred in refusing to admit the testimony of a witness, W. L. Kohl, as to the speed at which the motorcycle was traveling when it passed him on the south slope of the viaduct; and his second allegation of error is, that the court erred in refusing to admit the testimony of this witness as to the speed of the motorcycle as it went down the north slope of the viaduct toward the point of the collision. The witness whose testimony is here involved was driving northward on highway No. 11 and testified that, as he was going up the south slope of the viaduct, the plaintiff's decedent passed him driving the motorcycle. The witness was asked how fast, in his opinion, the motorcycle was going when it passed him and, on objection of the appellee that the question was too remote, incompetent, irrelevant and immaterial, he was not allowed to answer. The witness further testified that, from where the motorcycle passed him to the scene of the accident, the motorcycle was not out of his sight. He was then asked how fast the motorcycle was going as it went down the north slope of the viaduct toward the point of the collision, and, upon objection that the question was too indefinite, not interrogating the witness as to any relative point, merely the north slope, and might be anywhere from the point he was talking about clear down to Schrimper's garage, he was not allowed to answer. To a later question, however, which asked how fast the motorcycle was going immediately before the crash, the witness, without objection, answered that it was going 70 miles or better. The trial court has considerable discretion in determining whether or not evidence as to speed at points more or less remote from the point of a collision should be admitted, and, where there is nothing in the question to indicate that the speed at a point some distance from the point of a collision has some connection with the speed at the point of collision, the trial court's ruling will not be disturbed. Like-

1282

wise, where the question is as to speed over a course intervening between the point of a collision and a point so remote therefrom that the speed might be reduced even to the extent of coming to a full stop, it is obvious that a question which may be answered by giving one speed as to one point in such course and by giving entirely different speeds at other points, would be subject to the objection that it is too indefinite. Ordinarily the speed material for consideration in case of a collision is that at the instant of or immediately before the collision, and as to this speed the witness was allowed to answer.

■■■ At the time that the objection to the question here involved was sustained, neither the question itself nor the evidence already in the record indicated that the speed over the entire distance was material. It is true that the appellant in argument states good reasons to sustain his contention that the evidence sought to be elicited by the questions to which objections were sustained was very material to his case. He now contends that, if such evidence had been introduced, it would have shown that, from the time the motorcycle passed the witness on the south slope of the viaduct, it was never out of the witness's sight, and that at all times between that point and the point of collision it was traveling at a speed of 70 miles per hour; that, as the speed of the automobile in making the turn, as testified by the defendant, was only three miles an hour, if the evidence excluded by the court's ruling were in the record, the jury could have found that the motorcycle was traveling approximately twenty times as fast as the automobile; that, when the defendant looked backward and extended his arm before beginning to make the turn, the motorcycle was not in sight, as claimed by him, or, in any event, that it was at such a distance away from the defendant that he would not be guilty of negligence in not observing it or in attempting to make the turn; and that, when the defendant began to make the turn, the motorcycle was at such a distance from the automobile that plaintiff's intestate had plenty of time and opportunity to pass the rear of the automobile, which was on the west half of the pavement, over the east half of the pavement, which was unobstructed. As thus stated by appellant in argument, the evidence excluded was material both on the question of defendant's negligence and the contributory negligence of plaintiff's intestate. The difficulty with appellant's position is that he now is argu-

ing matters to this court and stating purposes for which evidence was sought to be introduced which were not stated to the trial court. It would have been a very simple matter for the appellant, when the objections to the questions propounded to the witness were sustained, to explain to the court the purpose for which he wished to introduce this testimony, and to make an offer of the testimony. No explanation of any kind was made by the appellant to the trial court as to why he desired to introduce the evidence concerning the speed over the entire distance, and no offer was made as to the evidence which would be introduced if the witness were allowed to answer the question. The question here involved is as to the alleged error committed by the trial court in sustaining objections to the questions which appellant says would have elicited the material evidence, but, at the time these rulings were made, neither the record nor the questions to which objections were sustained disclosed that such evidence was material. So far as we can find, all of our decisions having reference to such a situation are to the effect that the exclusion of the evidence is not prejudicial error. Ruebel Bros. v. American Express Company, 190 Iowa 600, 180 N. W. 658; Bomgren v. Hanish, 194 Iowa 1117, 191 N. W. 79; Glendy v. National Travelers Ben. Assn., 180 Iowa 572, 163 N. W. 352; Taft v. Snouffer, 157 Iowa 461, 137 N. W. 922; Luther v. Ullritch, 182 Iowa 745, 166 N. W. 85; Heisel v. Minneapolis & St. Louis Railway Co., 185 Iowa 885, 171 N. W. 177; Arnold v. Ft. Dodge, etc., R. R. Co., 186 Iowa 538, 173 N. W. 252; Linnemann v. Kirchner, 189 Iowa 336, 178 N. W. 899.

 II. Appellant's third to twenty-second allegations of error relied upon for reversal go to the refusal of the trial court to give instructions requested by appellant. The giving of some of the instructions requested would have been tantamount to directing a verdict for the defendant. Others of such instructions asked the court to instruct in regard to specific matters of evidence which might well have had the effect of emphasizing such specific items of evidence as compared with others of equal importance. And still others of the requested instructions had reference to matters which, in our opinion, were sufficiently covered by the charge given by the court. As to none of the requested instructions covered in these divisions of the appellant's brief and argument was there any error on the part of the trial court in refusing to give them. Moreover, even if there were

error in refusing any of these instructions, we do not find that the appellant made such exceptions as would entitle him to a consideration of the errors now alleged. The only notation on the instructions themselves was that made by the judge on each of these instructions, which stated that the instruction was "asked, refused and defendant excepts". In the exceptions to instructions, filed by appellant in connection with his motion for new trial, we find no reference to the instructions requested by him and refused by the court. And, while in his motion for new trial he refers to the 16 instructions requested and refused, as to only a few of these instructions does the motion state more than that the court erred in refusing to give them, and in the others, in which something further than this bare statement is contained, there is a failure to specify the grounds of such exceptions. Section 11495 of the Code specifies that exceptions may be taken to instructions refused as well as those given, "but all such exceptions shall specify the part of the instructions as excepted to, or of the instructions requested and refused and the grounds of such exceptions." In the absence of such specification of grounds of exceptions, this court may not review the trial court's refusal to give instructions requested. Anthony v. O'Brien, 188 Iowa 802, 175 N. W. 750; Farwark v. Chicago M. & St. P. R. Co., 202 Iowa 1229, 211 N. W. 875; Oestereich v. Leslie, 212 Iowa 105, 234 N. W. 229. We find no error in the trial court's refusal to give the requested instructions.

▉▉▉ III. Appellant's twenty-third to twenty-sixth allegations of error relied upon for reversal allege errors on the part of the trial court in overruling grounds 1 to 5 of appellant's motion for a directed verdict made at the close of plaintiff's evidence and renewed at the close of all the evidence. Without repeating the voluminous argument presented in support of these five separate alleged grounds of error, it is sufficient to say that they are based upon the claim that the evidence was insufficient to establish negligence on the part of the defendant, and that the evidence affirmatively shows that the plaintiff was guilty of contributory negligence. While it may be conceded that the evidence in this case was such that the jury could have found therefrom that there was no negligence on the part of the defendant, and that the deceased was guilty of contributory negligence, we are satisfied that the evidence is not such that the court could say, as a matter of law, that there was no evidence to support

the jury's finding of negligence on the part of the defendant, or that the court could say, as a matter of law, that the deceased was guilty of contributory negligence. We are satisfied that there was a clear conflict in the evidence, and that there was an abundance of evidence upon which the jury could have found a verdict either for the plaintiff or for the defendant, but the evidence is not such that the court could, as a matter of law, direct a verdict for either of the parties.

IV. Many other allegations of error are set out and argued by appellant. We have examined all of such allegations of error and the arguments in support thereof, and we find no prejudicial error on the part of the trial court in connection with any of them.

It follows, therefore, that the judgment and rulings of the trial court appealed from must be, and they are, hereby affirmed.—Affirmed.

MITCHELL, ANDERSON, KINTZINGER, RICHARDS, MILLER, and HAMILTON, JJ., concur.