WILLIAM PLATT, Appellee, v. AMERICAN CEMENT PLASTER
COMPANY, Appellant.

RELEASE: Negligence in Signing—Estoppel to Repudiate. One may
1 be so negligent in signing a release of a valuable right that
he will be estopped thereafter to assert (a) that it was not
such a writing as he intended to sign, or (b) that it does not
express the intention of the parties, or (c) that it was ob-
tained by fraud.

TRIAL: Instructions—Assumption of Fact—Signing Release. In-
2 struction covering the circumstances which might excuse one in
signing a release without reading, reviewed, and held not to be
guilty of the vice of assuming the truth of facts in issue.

RELEASE: Right to Rescind—Mutual Mistake—Fraud—Personal
3 Injury. Mutual mistake may be sufficient to avoid a release
of a personal injury claim—for instance, that the payment
was intended as payment of wages only.

*Appeal from Webster District Court.*—HON. R. M. WRIGHT,
Judge.

THURSDAY, MARCH 11, 1915.

ACTION at law to recover damages for injuries received
by plaintiff while in defendant's employ in a stucco plaster
mill. Trial to a jury. Verdict and judgment for plaintiff
and defendant appeals.—*Affirmed.*

*Parker, Parrish & Miller,* for appellant.

*Kenyon, Kelleher & O'Connor,* for appellee.

DEEMER, C. J.—Defendant is engaged in the manufac-
ture of stucco plaster, and at the time in question was operat-
ing a mill near Ft. Dodge. Plaintiff was in its employ and
was hired to do the work of mixing and sacking the plaster.
He had never worked about the grinders, nor was he employed

to shift belts or look after pulleys or shafts. These parts of the machinery were located in defendant's mill upon another floor from the one where plaintiff was employed.

On the day of the accident and a few minutes before it occurred, defendant's superintendent, finding that an employee having charge of the belts and pulleys was or was about to be absent from his place, called plaintiff away from his regular work and directed him to watch the belts on the floor below where he was working, and if any of them came off to go down and put them on. Shortly thereafter, a belt came off and pursuant to instructions, plaintiff went below and undertook to replace it; and in the act of so doing his clothing caught upon a pulley or shaft which was revolving at a speed of about 97 to the minute, and he, plaintiff, was severely injured on his arms, leg, and body, by being wound around the shaft and thrown against planks and lumber, both below and above the shaft. The machinery was stopped as soon as possible and plaintiff removed from his position by cutting off his clothing which had become fastened either to the shaft or to a pulley thereon.

At that time he, plaintiff, was unconscious, and he does not know just how the accident occurred. Some of the bystanders testified, however, that his jacket was caught by a set screw on the collar that held the shaft in position, and that this set screw stuck out from the pulley an inch or three quarters of an inch. There was also testimony to the effect that this set screw had been exposed for some time prior to the accident.

Plaintiff knew nothing of the set screw and was not informed of the hazards incident to the replacement of the belt. The extent and seriousness of plaintiff's injuries were not known until some time after the accident. The negligence charged was: first, the ordering of plaintiff to work in a more hazardous place than that in which he had been employed, without warning him of the dangers incident thereto; second, permitting the set screw to remain unguarded;

and third, failure to furnish proper tools and implements as belt shifters.

Defendant denied the alleged negligence; pleaded that it had covered the set screw with plaster or cement and did not know that it had become exposed prior to the accident; that plaintiff knew as well as it did of the exposed condition of the screw and assumed the risk incident to work around it; and also pleaded a full settlement, accord, and satisfaction for the injury, evidenced by a receipt and release of which the following is a copy:

"I, W. H. Platt, hereby admit and acknowledge that there has been paid to me in hand this day by the American Cement Company the sum of seventy-five and no/100 dollars, and Doctor Bowen's bill $35.00, and hospital bill $21.58, in full settlement accord and satisfaction of any and all claims or demands of every description which I now have or may hereafter have against the said The American Cement Plaster Co. on account of an accident causing injury to me on or about October 26th, 1910.

"IN TESTIMONY WHEREOF, I have hereunto set my hand and seal this 12th day of November, 1910.

"W. H. Platt,    (Seal)

"Witnesses:

"George Wittman, 1726 13th Ave. So.

"C. Woodbridge."

Plaintiff in reply pleaded that this receipt and release was given simply as a receipt for five weeks' wages at the rate of $15 per week, and that he did not know when he signed it that it was other than a receipt for such wages given for the estimated time which he was expected to lose from his work on account of his injuries. He also pleaded that said receipt and release was procured from him by fraud and misrepresentation at a time when he was suffering from great pain and while in an enfeebled and weakened condition; that it was represented to him that the money was paid him simply

for time lost and was not intended as a full settlement of his claim; that he did not know the terms or conditions of the paper; that it was represented to him by the person who took the receipt that he would be completely recovered and fully able to do his accustomed work within five weeks, which he believed to be true and upon which he acted, and that as a matter of fact, said statements were untrue. He tendered back the amount paid him by defendant and also offered to refund any amount it had paid to doctors or as hospital bills.

These were the facts and issues upon which the case was tried, resulting in a verdict for the plaintiff in the sum of $2,000.00.

I. Several propositions are relied upon for a reversal; the first being that there is no testimony to show that defendant was injured by reason of an unguarded set screw. We think there was such testimony and although the witnesses disagree as to just where the set screw was, there is ample testimony to the effect that when plaintiff was removed from the shaft, his jacket was found fastened to the set screw and wrapped around the shaft or pulley. While there were several ways in which plaintiff's clothing might have been caught by the shaft, a jury may well have found that it was by the unguarded set screw. Again, there was sufficient testimony to justify a jury in finding that the set screw was either improperly guarded by the use of cement, held in place by a cloth wrapped around the pulley or shaft; or that this guard had come off a sufficient length of time before the injury so that defendant in the use of reasonable care should have remedied the defect. These were both jury questions and there was no error in submitting them to that body. *Stephenson v. Tile Co.*, 151 Iowa 371; *Lunde v. Packing Co.*, 139 Iowa 688; *Lehman v. Minn. Ry. Co.*, 153 Iowa 118; *Brownfield v. Ry. Co.*, 107 Iowa 254, 258.

II. Instruction No. 8, given by the trial court, reads as follows:

"If you find the above things to have been established by a preponderance of the evidence, and you further find that a reasonably careful and prudent man, situated as plaintiff was at the time he signed the said release, *might, while acting as a reasonably prudent man, have done* just as plaintiff did, and might while acting as a reasonably prudent man have signed just such paper as plaintiff did sign; and you further find that plaintiff has returned or offered to return the money he received on his account, then if plaintiff has established the foregoing facts by a preponderance of the evidence, you would be justified in finding that said release or receipt is void and of no effect; but unless plaintiff has so established said facts by a preponderance of the evidence, then said release would not be void, but would be binding upon plaintiff, and you should return a verdict for the defendant."

1. RELEASE: negligence in signing: estoppel to repudiate.

The italicized portion of this instruction is complained of. The only relevant exception taken to the instruction before it was read was in this language:

"The defendant further excepts to said instruction for the reason that therein the jury are told that if they 'further find that a reasonably careful and prudent man situated as plaintiff was at the time he signed the release might have done just as plaintiff did, and might have signed just such a paper as plaintiff signed.' This is erroneous and misleading and does not state a correct proposition of law, because the jury might conclude from the paragraph quoted, that if a reasonably careful and prudent man might have done just as plaintiff did, then they would be warranted in finding for the plaintiff. A reasonably careful and prudent man might have done just as plaintiff did; yet it is not the law that such would be an excuse for the signing of the written instrument without reading or having it read, or ascertaining its contents. It is an incorrect statement of law. The law requires a party when there is nothing to prevent his read-

ing or ascertaining the contents of an instrument, to read or ascertain its contents, and it is not a question of degree of care, nor a question whether an ordinarily prudent man might have done as plaintiff did, and the instruction is therefore erroneous, does not state the law correctly; it is misleading and confusing.''

It will be noticed that this is not predicated upon the misuse of the italicized words, but upon the proposition as a whole; and no suggestion was made that the test was not what a reasonably careful and prudent man *might* have done, but what he *would* have done. Assuming then that the instruction is the equivalent of one stating that the test was what a reasonably careful and prudent person would have done, we think there was no error prejudicial to the appellant. One may be precluded by his negligence from asserting that an instrument such as the one here involved, was not such an one as he intended to sign, and that it does not express the true intent of the parties or was obtained by fraud; but what amounts to negligence, creating such an estoppel, is a question for the jury; and if that be true, appellant cannot complain if the test is made,—what a reasonably prudent and careful person would do under like circumstances. *U. P. R. R. Co. v. Harris,* 15 S. C. Rep. 843; *Hopkins v. Ins. Co.,* 57 Iowa 203; *Shores-Mueller Co. v. Knox,* 160 Iowa 340.

2. TRIAL: instructions: assumption of fact: signing release.

III.    Instruction No. 9, given by the trial court, was as follows:

''A man in health and accustomed to the transaction of business, in executing such paper as that offered in evidence in this case, would not be at liberty to deny his knowledge of its contents. But one in the situation the plaintiff was in, lying on his bed, if he was lying on his bed, prostrated and distracted by the pain which came to him from the injury he received, if he was so distracted, might under such circumstances, if you find the same have been proved, as are set forth

in instruction No. VIII, be excused from reading it, if in fact he did not read it, or from having the same read to him if he did not have it read. He may be excused because he was in such pain, agony and misery; but if he understood what he was doing, and understood that he was making a settlement of the whole business, of the entire matter between himself and the defendant, then he would be bound by the settlement without regard to the amount of money which he received. If the settlement was made with the full understanding of the rights of the parties, plaintiff then being in such a state of health and mind as to enable him to transact such business, then you should say that the settlement is binding upon the plaintiff, and he is concluded in this action, and you need make no further inquiry in respect to it; that is to say, his suit in this case cannot be maintained, and your verdict should be for the defendant.''

This is challenged because it is said to assume certain facts to have been proved. We do not so understand the instruction. It merely stated what plaintiff claimed the facts to be and left it to the jury to say which of these facts, if any, were proved. Whilst the instruction is somewhat out of the ordinary, yet courts are not required to use any stereotyped forms. See the *Harris* case, *supra*.

The defendant's view of the case in this respect was fully covered by other instructions, notably X½ and XIII. and we see no error here.

VI. Appellant's main stress is upon the proposition that the settlement and release were and are binding upon plaintiff and that he is not entitled to recover in the face of this release. Plaintiff, while admitting the signing of the receipt, says that it was not given in settlement of his entire claim; but simply for five weeks' wages and that he signed the paper without knowing that it was anything other than a receipt for this amount. He also pleaded fraud and

3. RELEASE: right to rescind: mutual mistake: fraud: personal injury.

mistake in the making of the settlement, and his enfeebled condition of mind and body.

If the jury believed the testimony that the receipt was simply to cover the five weeks' wages, and plaintiff is excused for signing the paper, then under our holdings, the release is no defense. That question is set at rest by the recent case of *Reddington v. Blue & Raftery*, 168 Iowa 34. See also *Stomne v. Produce Co.*, 108 Iowa 137; *Whitney & Starrett Co. v. O'Rourke*, 50 N. E. 242; *Rauen v. Prudential Ins. Co.*, 129 Iowa 725. Again, a jury was justified in finding that defendant's agent who took the release did not correctly state to plaintiff what the physician had told him, but put it in other language of a different meaning, and misrepresented the character of the paper which he induced plaintiff to sign. These were all jury questions, the evidence being somewhat conflicting, and the verdict is conclusive.

No prejudicial error appears and the judgment must be and it is,—*Affirmed.*

LADD, EVANS and PRESTON, JJ., concur.