ETTA M. GARNER et al., Appellees, v. H. F. JOHNS, Appellant.

FRAUD: Fraudulent Representations—Reliance—Negligence—Governmental Descriptions Revealing Truth—Effect. The fact that a contract for land was read by the purchaser, and specifically described the land by the usual abbreviated governmental descriptions, and thereby demonstrated that the land extended *north and south*, does not *necessarily* estop the purchaser, who is unfamiliar with such descriptions, from relying on antecedent false representations that the land, known by a popular designation, extended *east and west*.

FRAUD: Fraudulent Representations—Governmental Descriptions. Principle recognized that it is a manifest fraud for one to sell land by governmental description and then to point out lands as meeting this description when he knows such representation is false.

*Appeal from Harrison District Court.*—E. B. WOODRUFF, Judge.

JANUARY 18, 1918.

ACTION for damages consequent on alleged misrepresentation of land resulted in judgment against defendant, from which he appeals.—*Affirmed.*

*Roadifer & Roadifer,* for appellant.

*H. L. Robertson,* for appellees.

1. FRAUD: fraudulent representations: reliance: negligence: governmental descriptions revealing truth: effect.

LADD, J.—The plaintiffs are husband and wife, and owned 320 acres of land in Colorado, incumbered with a mortgage of $2,132.50, and Mrs. Garner, a house and lot in Missouri Valley, subject to a loan of $400. The defendant held a contract for the purchase of the W½ SE¼ of Section 30, in Township 80 North, of Range 43 West of the 5th P. M., executed by Frazier to Unmack, and by the latter assigned to him, on which there was owing $5,040. An even exchange was made, in pursuance of a written contract entered into June 18, 1913. In this action, plaintiffs sought to recover damages consequent on deceit alleged to have been practiced by defendant in misrepresenting the location of the land, the contract to purchase which he assigned to them. It appears that one Small, who then resided at Magnolia, persuaded Garner to accompany him to Woodbine, in order to propose an exchange of the Colorado land for the 80 acres known as the Weed 80. Garner testified that Small told him that the 80 acres lay east and west along the road, and described how the land so lying appeared, that such representations were in the presence of defendant. An exchange seems to have been agreed to, but subject to inspection of the Colorado land. Later, defendant telephoned Garner to come to see him, which he did, when defendant informed him that the Colorado land was not as valuable

as he supposed, and that he would not exchange unless the house and lot in Missouri Valley were included. As this was owned by Mrs. Garner, they proceeded to Missouri Valley, where, as she testified, defendant described the condition of the land and crops growing thereon as though the said 80 acres extended east and west. Garner corroborated her testimony, and both swore that, but for believing the 80 lay east and west, as represented, they would not have entered into the contract, which was drawn by defendant and signed at that time, June 18, 1913.

This contract described the land as the W ½ of the SE ¼ of the section; and, though plaintiffs read it, both say that they did not notice that the description was of a different 80 than that described by Small and defendant, and did not notice this when the contract of purchase, duly assigned to them, was delivered, on December 1st of the same year. Both knew generally where what was known as the Weed 80 was located; but, as the improvements were on the south 40 acres, testified that they were not aware whether the other 40 was to the north or to the east, save as represented by Small and defendant; and, as Garner knew of the lay of the land to the east, he did not go to see it; but this last was, in a way, controverted. Both testified that they were not familiar with government descriptions: Garner, that he did not know the description of the Weed 80, and that he did not understand, from the description in the contracts, its location as other than as represented; Mrs. Garner, that she did not notice but that the description of the land was as represented,—that she relied upon the honesty of defendant, but could, if she had given the matter sufficient attention, have figured it out. Defendant denied representing the land as testified to, and swore that the first time that such a thought had come to him was when the original notice in this case was served on him. He is somewhat corroborated by evidence of statements to Frazier in-

dicating that Garner had examined the Weed 80; but Small was not called as a witness. On the other hand, doubt is cast on defendant's testimony, and that of plaintiffs' somewhat confirmed, by the conduct of Small and defendant in their prompt undertaking to exchange the 80 acres to one Derry, going so far as that defendant assigned the contract of purchase direct to Derry, but procured its return, when Garner refused to make the deal, even when threatened with suit. Another incident may throw some light on the relative sagacity of the parties. One Cleveland testified in defendant's behalf that, on Aug. 17, 1914, he made a deal with plaintiffs whereby he assigned a contract for the purchase of 160 acres of land in Wyoming to plaintiffs, and received from them an assignment of the purchase contract of the Weed 80 acres; that Johns had nothing to do with the transaction; but, on cross-examination, that:

"After Garner and I made our trade on the 17th or 18th of August, 1914, I walked out of the bank onto the sidewalk, and Johns met me. Johns and I went over to Garner's right away after the trade between Garner's and me. Q. You met him (referring to Johns) there, and you turned him over the contract you got from Garner, to Johns, didn't you? A. Yes. Q. And Johns here gave you the Missouri Valley property he had gotten from Garner? A. Yes. Q. Well, now then, Johns got the Missouri Valley property back from you, didn't he? A. Yes, sir. Q. So Johns gets the whole thing, don't he? A. Yes. Q. You were not a trader,—not a real estate man or a trader at all,—are you? A. No, sir. Q. Never had been? A. Never had been."

Of course, many of the details have been omitted, our purpose being to set out no more of the record than necessary to show that the evidence was sufficient to carry the issue of deceit to the jury. The only debatable question is whether plaintiffs should be concluded by the descrip-

tions contained in the contract of exchange and that of pur-
chase. Both could read, but neither was familiar with gov-
ernment descriptions, as the jury might well have found.
The description as contained in the contract read in *haec
verba*: "The W½ of the SE¼ of Sec. 30, Twp. 80, Range
43." Persons accustomed to deal in land would appreci-
ate the location intended, though many of these, even, would
first make a plat. Others, not familiar with governmental
descriptions, might experience some difficulty in ascer-
taining the precise meaning of the abbreviations employed,
and also in applying them to the definite location of the
land. This would bear on the issue as to whether plaintiffs
exercised ordinary care in ascertaining whether the land
represented by defendant and Small was described in the
contracts. If one in entering into a written agreement does
not understand its terms, he may, in the exercise of ordi-
nary prudence, be required to ascertain, on the advice of
others more capable than himself, its true meaning, and, on
failure so to do, be held guilty of negligence precluding
him from asserting ignorance with respect to any part of
such agreement; for the rule obtains in this state that, if a
party can read, or if, by the exercise of reasonable diligence,
he might have ascertained the defect in an instrument com-
plained of, he is bound thereby, being conclusively pre-
sumed to know its contents. *McCormack v. Molburg,* 43
Iowa 561; *Wallace v. Chicago, St. P., M. & O. R. Co.,* 67
Iowa 547; *Reid, Murdock & Co. v. Bradley,* 105 Iowa 220;
*Bannister v. McIntire,* 112 Iowa 600.

It will be observed that the plaintiffs do not claim that
either defendant or Small represented the land as a speci-
fied government subdivision, but, on the contrary, swore
that they referred to the land as the "Weed 80," and de-
scribed it as lying "east and west." Garner knew where
the buildings on the Weed 80 were, and did not know wheth-
er it extended east and west, save as represented by the de-

fendant and Small, who not only so described the land, but accurately described its physical condition. The jury could have found, from the evidence adduced, that these plaintiffs were led to believe that they were to be given a tract of land with which Garner was familiar,—that is, the land where the buildings were and that lying to the east of them. The writings delivered them advised them that what they were getting was the "W½ of the SE¼ of Sec. 30, Twp. 80, Range 43." If the representation had been that they were to have the "S½ of the SE¼," etc., possibly they might be estopped from claiming that they were not advised by the contracts of what was being transferred to them,—a point not decided. So, too, if the representation had been that they were to have a tract of land which lay east and west, and the writing which they read advised them in terms that a piece of land lying north and south was being tendered, it is hardly conceivable that they could have read the contracts without discovering the difference, and therefore, doubtless, would have been conclusively estopped from asserting deception. This case is different from either of those supposed; for, according to the evidence of plaintiffs, the representation was that the Weed 80 was being traded, and that it lay east and west; and the mere fact that they did not discover the contrary fact, upon reading the somewhat complicated description contained in the contracts, which, upon sufficient labor and care, might have been found to contradict the representations made, will not work an estoppel, as a matter of law. It is largely a question of degree. Things that often are matters of law in some instances become questions of fact. Issues that are ordinarily for a jury may have to be determined by the court. Though read, the contracts were not so palpably contradictory of the antecedent false representations as that plaintiffs, in not observing the variance, may be held negligent, as a matter of law. Whether there was negligence on the part of the

plaintiffs, then, is the crux. If a buyer is plainly informed by what he reads that he is not getting that which was represented, it is manifest that he is being defrauded, and proceeding further estops him from asserting the fraud; but when the information is less palpable, and the evidence is such that a jury may find that a degree of prudence and care in excess of that ordinarily observed by reasonably prudent persons only would have enabled him to discover the difference, then whether he used sufficient diligence becomes a question for the jury. We are of opinion that, inasmuch as the evidence tended to show that defendant and Small represented to the plaintiffs that they were to have the Weed 80, that it lay east and west, and accurately described such land physically, and did not mention the government description thereof, plaintiffs cannot be held negligent, as a matter of law, in not ascertaining, upon reading or otherwise, that the land as represented was not that described by abbreviations, as heretofore set out, and that the issue as to whether they were negligent in not ascertaining the difference was a proper issue to be submitted to the jury.

2. FRAUD: fraudulent representations: governmental descriptions.

This ruling is fairly within the principle wherein, if a vendor sell land by description, and by pointing out a tract exhibited as meeting that description, when in fact it does not meet it, the buyer who relies on the assertion is not without remedy, even though he might have prevented it by having a survey made, or otherwise so investigated as that he would have discovered the deception. The evidence was such as to carry the issue of fraud to the jury.

Several of the instructions are criticised; but, as no objections thereto were interposed prior to filing a motion for new trial, and no showing made for not so doing in said

motion, these may not be examined. *Chumbley v. Court-ney,* 181 Iowa 482; *City Nat. Bank v. Mason,* 181 Iowa 824.

The record is without reversible error, and the judgment is—*Affirmed.*

PRESTON, C. J., EVANS and SALINGER, JJ., concur.