FRANK HOUCHIN, Appellee, v. J. AURACHER, Appellant.

**REFORMATION OF INSTRUMENTS:** Negligence. A person of de-

fective eyesight, but of large business experience, who signs a writing without any effort whatever to learn its contents, though friends are present who would have read the writing, if requested, may not complain of the refusal of the court to grant his prayer for reformation.

*Appeal from Taylor District Court.*—H. K. EVANS, Judge.

OCTOBER 17, 1922.

ALLEGATIONS and prayer for reformation of a lease contract were made in the answer of defendant in a law action for collection of rent. Thereupon, such issue was transferred to equity and heard. Facts appear in the opinion. Partial reformation was granted, and further relief refused, and defendant appeals.—*Affirmed.*

*Jackson & Jackson* and *Wilson & Keenan,* for appellant.

*R. T. Burrell* and *Flick & Flick,* for appellee.

ARTHUR, J.—This action was brought on a note and lease, to recover rental for 80 acres of land leased by plaintiff to defendant. Defendant admits renting the premises and executing the lease and note for the rental; and pleaded a counterclaim or set-off against the rental note, based on the alleged failure of plaintiff to perform his part of the lease contract, claiming that plaintiff failed to maintain in suitable condition for operation and use a certain well, pump, and windmill located on adjacent land belonging to the plaintiff, and the piping through which the water was thrown from said well to the tank on the leased premises, rendering the leased premises of no value to defendant for pasturage purposes. Defendant also averred that, prior to the execution of the written lease, he and plaintiff entered into an oral contract, whereby he rented the 80 acres of land from plaintiff, and that the oral contract entered into between them was identical with the written lease, with the exception that, as one of the terms of said contract, plaintiff agreed that he would "maintain, during the life of said lease, in suitable condition for use, a certain well, pump, and windmill which stood on land belonging to lessor and adjacent to the land in

question, and which supplied water through piping to a tank on the land leased to this defendant.'' Defendant further alleged that the plaintiff caused the lease in question to be drawn in the absence of the defendant; and that, by oversight and mistake, he failed to insert in said writing the above quoted provision with reference to the maintenance of said well, pump, windmill, piping, and tank; that the lease, after being prepared and signed by the plaintiff, was submitted to defendant for his signature; and that defendant's eyesight was so affected that he could not read except with great difficulty, without his glasses; and that, at the time he signed the lease, he did not have his glasses and could not then procure any with which to read said instrument; that, relying upon the understanding and belief that said lease embodied correctly the terms of the oral agreement, he affixed his signature thereto; that he would not have signed the lease, had he known that it did not contain the above quoted provision, which he said should have been incorporated in the lease; that said provision was omitted from the lease by a mutual mistake of the parties; and that said writing does not express the true contract entered into between the parties.

Appellant prayed that the lease be reformed so as to conform to the oral contract as alleged by him, and that, for the determination of said question of reformation of said instrument, the cause be transferred to the equity docket. Thereupon, the law case was halted, and the issue of reformation of the lease was heard in equity. Appellant, having the burden, submitted the testimony of himself and C. E. Swank, who was working for him on his farm, in support of his claim of what the oral contract was, and of the circumstances surrounding the signing of the lease by him. Appellee submitted the testimony of himself and of the scrivener who drew the lease. In a written opinion, the lower court said:

''The evidence is somewhat conflicting, and in order to reform a writing, the evidence must be 'clear and satisfactory.' The written contract itself was one which the defendant had an opportunity to examine, and the evidence disclosed that the defendant is a man of business capacity, having done a large amount of business, and being a man of decided ability; and if it were not for the fact that the plaintiff himself admits that

certain considerations of the agreement were not placed in the writing, the court would be inclined to refuse to reform the contract; but the plaintiff himself states that he was to repair the windmill which is the subject of the controversy. This is also testified to by the scrivener who prepared the instrument, in which he says that the plaintiff stated that he was to repair the windmill, put it in repair, and asked him if it was necessary to put it in the contract, and the scrivener, Mr. Brown, advised him that it wasn't necessary to do so. * * * The court thinks, in view of the admission of the plaintiff and the evidence, that the contract should be reformed as follows: There should be added to the written contract between plaintiff and defendant, as it appears, the following: 'The first party, Houchin, agrees to repair a certain windmill and pump on other land owned by first party, the water from which well, windmill, and pump is conducted by pipe into the tank on the land leased by Auracher, the second party.' This clause which the court thinks should be added to the written contract should appear in the last paragraph immediately preceding the sentence, 'No repairs will be made by the lessor except as herein set out, and it is agreed that the lessor shall not be liable for any damage to crops,' etc. This last provision, which already appears in the contract as to repairs, is another reason why the court thinks no further modification of the written contract should be ordered by the court, because the defendant signed this contract knowing that this provision, or at least having an opportunity to know that this provision was in the contract itself. And as heretofore indicated, if it were not for the fact that there seems to be no dispute between the plaintiff and defendant as to the agreement that the windmill and pump were to be repaired by the plaintiff, the court would feel that the evidence was of doubtful sufficiency to justify the reformation; but in view of their practical agreement as to this particular matter, the written contract is ordered to be reformed as above indicated.''

The above quoted findings of the court are supported by the record, and we approve such findings of fact and law.

The testimony of appellee, and also of the scrivener, Brown, was to the effect that the clause afterwards inserted in the lease by the court was not omitted by any mistake on the part of

appellee or mutual mistake on the part of the parties, but was omitted only for the reason, as stated by the court in his opinion, that appellee told the scrivener that he was to repair the windmill, and was advised by the scrivener that it was not necessary to put this provision in the contract. We think that the record does not support appellant's contention of mutual mistake. However, the cause may be determined on the negligence of appellant in signing the lease without reading it or asking anyone present to read the lease for him. Appellant is a business man of large experience in dealing and contracting. H. E. Brown, a real estate dealer, had drawn the lease, and it had been left at the home of O. E. Swank, living on the farm belonging to appellant. Appellant found the lease at Swank's home, and there, in the presence of Swank and his wife, both of whom could read, he signed it without reading it or asking anyone present to read it for him. He made no effort to ascertain what was in the lease, before he signed it. His only excuse for not reading the lease is that he did not have his glasses with him. There were present both Swank and his wife, either of whom he could have asked to read the lease to him; but he did not avail himself of such assistance. There is no claim that any fraud or artifice was practiced, to prevent him from ascertaining the contents of the lease that he signed. Defendant testified:

"I did not use any effort or make any demand to know what was in the lease before I signed it. Mr. Swank and his wife could read and write, but I did not ask them to read it for me."

Counsel for appellant argue that Houchin, by leaving the lease with Swank to have it signed by appellant, thereby made Swank his agent for securing the signature of Auracher to the lease; and that, when Swank presented the lease to Auracher for his signature, he told Auracher, "Here's the lease, filled out like you and Houchin agreed." Swank testified that he did not read the lease. Swank made no representations to appellant as to the contents of the instrument. There is no claim that Swank or anyone else made any false representations to appellant, to secure his signature to the lease, and it would not have excused appellant for negligence if Swank had misrepresented to him the provisions of the lease, and he had relied upon representa-

tions made by Swank. Appellant was guilty of inexcusable neglect, and is not entitled to reformation of the contract in question, further than that ordered by the lower court. This case must be ruled by *McCormack v. Molburg*, 43 Iowa 561; *Minneapolis & St. L. R. Co. v. Cox*, 76 Iowa 306; and other like cases. See, also, discussion in *Garner v. Johns*, 182 Iowa 684 to 688; *Shores-Mueller Co. v. Lonning*, 159 Iowa 95.

The decree of the lower court must be, and is, affirmed.— *Affirmed.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.