MRS. W. H. CRUM, Appellant, v. ROY V. McCOLLUM et al., Appellees.

No. 40318.

DECEMBER 9, 1930.

*Guy A. Miller,* for appellant.

*H. B. White* and *Havner, Flick, Huebner. & Powers,* for appellees.

WAGNER, J.—The defendant Roy V. McCollum is the owner of an Essex automobile, which, at the time of the collision, was being operated with his consent, by his wife, the other defendant. At the time of the collision, the plaintiff was riding in a Ford coupé, which was registered in the name of her husband. There is testimony that the car belongs to both Mr. and Mrs. Crum. The collision occurred in the intersection of Thirty-eighth Street and Cottage Grove Avenue, in the city of Des Moines. Cottage Grove Avenue runs east and west, and the two streets intersect at right angles. The Methodist Church is located at or near the southwest corner of said two streets. The collision occurred about 12:30 P.M. on January 22, 1928, immediately after church services. The Crum car had been parked on the south side of Cottage Grove Avenue, facing east. After the services, Mr. Crum, his wife, and a friend, Mrs. Fountain, entered the Crum car, the plaintiff being seated between the other two. The Crums desired to go north on Thirty-eighth Street, and drove into the intersection, preparatory to going in that direction, and, somewhere north of the center point of the intersection, the Crum car was struck on the right side by the McCollum car, coming from the east, and shoved to the west and northwest. There is testimony that the Crum car cut the northwest corner of said intersection in making the turn; but, because of our view as to the settlement made in this case, we will not dwell upon the details of the acts claimed by the plaintiff to have constituted negligence on the part of the defendants, nor upon acts claimed by the defendants to have constituted contributory negligence on the part of the plaintiff.

This action is the ordinary action for personal injury to the plaintiff, alleged to have been caused by the negligence of Mrs. McCollum, the operator of the Essex car, at the time in question. The defendants admit in their answer that, at that time, the car was being driven by Mrs. McCollum, with the consent of her husband, who was the owner of the car. They deny negligence on their part, and allege contributory negligence on the part of the plaintiff, and plead settlement by reason of two written con-

tracts or releases. The plaintiff, by way of reply, pleads that one of said written contracts does not purport to be a release for any injury suffered by her, and that her signature to the other one was procured by fraudulent representations made by one Ryan, an agent of the insurance company which had insured the defendants against liability for damages occurring by reason of their use of the car.

At the close of plaintiff's evidence, the court directed a verdict for the defendants. The motion is based upon twenty separate and distinct grounds. We will consider only one, and that, the question of settlement made by the plaintiff. Mr. Ryan, representing the insurance company, called upon the Crums, and told them to take their car to a certain garage for repairs. After the repairs were made, Mr. and Mrs. Crum proceeded to the garage to obtain the car; but since they did not find it satisfactory, additional changes were made, as requested by them, and then one of the men in charge of the garage said: "Now, Mr. and Mrs. Crum, your car is all ready. If you will sign up for it, you can have it and go." Mrs. Crum, without reading, then signed the release known in this record as Exhibit A, which is as follows:

"Release.

"Know all men by these presents, that I, W. H. Crum, for the sole consideration of twenty-four and 50/100 dollars, to me in hand paid by R. V. McCollum, the receipt whereof is hereby acknowledged, have released and discharged, and by these presents do for myself, my heirs, executors, administrators and assigns, release and forever discharge the said R. V. McCollum of and from all claims, demands, damages, actions, causes of action, or suits at law or in equity of whatsoever kind or nature for or because of any matter or things done, omitted or suffered to be done by said R. V. McCollum prior to and including the date hereof, and particularly on account of the injuries both to person and property resulting, or to result from an accident which occurred on or about the 22d day of January, 1928, at Des Moines, Iowa.

"In witness whereof I have hereunto set my hand and seal this ............ day of ............ 19.........

"[Signed] Mrs. W. H. Crum.

"In the presence of W. Jensen."

Sometime thereafter, Ryan again appeared at the home of Mr. and Mrs. Crum, when both of them signed the contract or release known in this record as Exhibit B, which is as follows:

"Release.

"Know all men by these presents, that I, Mrs. W. H. Crum and W. H. Crum, for the sole consideration of $5.00 and repair of car, to me in hand paid by the United States Fidelity & Guaranty Company, receipt whereof is hereby acknowledged, have released and discharged and by these presents do for myself, my heirs, executors, administrators and assigns, release and forever discharge said R. V. McCollum and Mrs. R. V. McCollum of and from all claims, demands, damages, actions and causes of action, or suit at law or in equity of whatsoever kind or nature for or because of any matter or thing done, omitted or suffered to be done by the said R. V. McCollum prior to and including the date hereto, particularly on account of all injuries both to person and property resulting or to result from an accident which occurred on or about the 22d day of January, 1928, at Des Moines, Iowa.

"In witness whereof we have hereunto set our hands and seal this 15th day of February, 1928.

"[Signed] Mrs. W. H. Crum,

"W. H. Crum.

"In the presence of R. L. Ryan."

We need not take the time and space to discuss the legal effect of the aforesaid release Exhibit A, in so far as the personal injury to plaintiff is concerned, but we will confine our discussion to the legal effect of Exhibit B, and what occurred at the time when the signatures thereto were obtained. It will be observed that said instrument provides that the Crums, for the consideration of $5.00 and repair of car, released and forever discharged R. V. McCollum and Mrs. R. V. McCollum (the defendants) of and from all claims, demands, damages, actions and causes of action, or suit at law or in equity, of whatsoever kind or nature, for or on account of all injuries, both to person and property, resulting or to result from an accident which occurred on or about the 22d day of January, 1928, at Des Moines, Iowa. It is thus apparent from the terms of the instrument that the Crums accepted the car as repaired, and the sum of $5.00 in full for all claims and damages resulting or to result from the collision. The

plaintiff cannot lawfully demand or claim more than one satisfaction for her injury, and, since she has received what she acknowledges as entire satisfaction for same, the law will not permit her to again recover for the same damage. See *Middaugh v. Des Moines Ice & C. S. Co.*, 184 Iowa 969.

Now, what as to plaintiff's claim of fraud in the procurement of her signature to Exhibit B? It is a well recognized rule of law in this state that, if a party is able to read, and has the opportunity to do so, but omits this precaution because of false statements by the adversary as to the contents of the instrument, his negligence in failing to read the instrument will estop him from claiming that the instrument is not binding. See *Shores-Mueller Co. v. Lonning*, 159 Iowa 95; *Garner v. Johns*, 182 Iowa 684; *McCormack v. Molburg*, 43 Iowa 561; *Wallace v. Chicago, St. P., M. & O. R. Co.*, 67 Iowa 547; *Blossi v. Chicago & N. W. R. Co.*, 144 Iowa 697; *Bannister v. McIntire*, 112 Iowa 600; *Bonnot Co. v. Newman Bros.*, 108 Iowa 158; *Minneapolis & St. L. R. Co. v. Cox*, 76 Iowa 306; *McKinney v. Herrick*, 66 Iowa 414; *State Sav. Bank, Missouri Valley, v. Deal*, 200 Iowa 490; *Houchin v. Auracher*, 194 Iowa 606; *Crim v. Crim*, 162 Mo. 544 (63 S. W. 489).

In *McCormack v. Molburg*, 43 Iowa 561, this court made the following pronouncement:

"In fact, no excuse whatever is given, except that he signed the contract relying on the representation of plaintiffs as to its contents. This is inexcusable neglect, and the defendant must suffer the consequences of his own folly. The effect of such a rule as that claimed by appellant would be to render written contracts of but little practical value over those existing in parol only."

In *Wallace v. Chicago, St. P., M. & O. R. Co.*, 67 Iowa 547, this court declared:

"He does not claim that he requested the instruments to be read to him, and that the contents were purposely misrepresented in the reading, or that he was deceived by any slight of hand, legerdemain, or artifice. On the contrary, he admits that he could have read the papers, and that he had full opportunity to do so, and the words 'release of damages,' in bold-faced

printed letters, were at the head of the release, and could have been seen at a mere glance.''

This court there held that, under such circumstances, it would constitute inexcusable neglect sufficient to constitute an estoppel from claiming that the contract was not binding according to its terms.

In *Blossi v. Chicago & N. W. R. Co.*, 144 Iowa 697, we said:

'' 'A written contract is the highest evidence of the terms of an agreement between the parties to it, and it is the duty of every contracting party to learn and know its contents before he signs and delivers it. * * * If one can read his contract, his failure to do so is such gross negligence that it will estop him from denying it, unless he has been dissuaded from reading it by some trick or artifice practiced by the opposite party.' ''

In *Spring Garden Ins. Co. v. Lemmon*, 117 Iowa 691, we find the following appropriate language:

''Defendants, as they testify, signed this instrument without reading it, relying solely upon Lemmon's statement of its terms. Nothing was done to prevent them from acquainting themselves with its contents, had they so desired. As this court has frequently held, this is such indifference as will preclude a remedy in their behalf in the event of deception.''

In *Bonnot Co. v. Newman Bros.*, 108 Iowa 158, this court made the following pronouncement:

''While persons, on the faith of another's word alone, every day sign contracts without reading them, the law has ever adjudged this such indifference as will preclude a remedy in event of deception.''

In *State Sav. Bank, Missouri Valley, v. Deal*, 200 Iowa 490, we declared that there is an exception to the rule that fraud in procuring the signature to a written instrument vitiates the same, and that exception is where the signer of the written instrument is guilty of negligence in the execution thereof.

In *Garner v. Johns*, 182 Iowa 684, we declared:

''* * * the rule obtains in this state that, if a party can read, or if, by the exercise of reasonable diligence, he might have

ascertained the defect in an instrument complained of, he is bound thereby, being conclusively presumed to know its contents.''

In *Houchin v. Auracher*, 194 Iowa 606, we said:

''However, the cause may be determined on the negligence of appellant in signing the lease without reading it or asking anyone present to read the lease for him. * * * Appellant found the lease at Swank's home, and there, in the presence of Swank and his wife, both of whom could read, he signed it without reading it or asking anyone present to read it for him. * * * His only excuse for not reading the lease is that he did not have his glasses with him. There were present both Swank and his wife, either of whom he could have asked to read the lease to him; but he did not avail himself of such assistance. * * * Appellant was guilty of inexcusable neglect * * *.''

In *Crim v. Crim*, 162 Mo. 544 (63 S. W. 489), the court declared:

''To permit a party, * * * to admit that he signed it, but to deny that it expresses the agreement he made, or to allow him to admit that he signed it, but did not read it or know its stipulations, would absolutely destroy the value of all contracts * * *.''

Similar quotations could be made from the other cited cases.

With the foregoing well defined rule of law to govern us in our decision, we now turn to the record in the case, to ascertain whether or not the plaintiff, at the time of the execution of the release Exhibit B, was guilty of inexcusable neglect, and thereby estopped from asserting that the contract or release is not binding on her according to its terms. It must be borne in mind that the car had been repaired sometime before she and her husband signed the release Exhibit B. She had taken part in the negotiations relative to the repair of the car. She had gone with her husband and procured the car after it was repaired, and there signed Exhibit A, without reading the same. She had not consulted a doctor for injuries received by her prior to the time when the release Exhibit B was signed. It will be observed that said release was signed 24 days after the collision. It is her contention that, on the 15th day of February, the date of the

signing of Exhibit B, Mr. Ryan, representing the insurance company, called at their home, and that, upon the representation of Mr. Ryan that the $5.00 was only for medical services, she signed the release without reading the same. She says she did not have her glasses, but admits that they were in the house. She testifies, in substance, that she is quite sure that her husband had on his glasses when he signed the same. Her niece was in the adjoining room, with the door open. She made no effort to get her glasses, nor asked to have the contract read to her. She does not claim that Ryan read the contract and misrepresented it by misreading it to her. Her claim is that the contract was not read at all. Her claim is that Ryan orally misrepresented to her the contents of the instrument signed. She testifies that she was suffering pain, both physical and mental, from her injury. At this point, it must be borne in mind that her injury had not been deemed by her to be sufficient to warrant her in having medical attention. She told Ryan that she was going to see a doctor the next day; but, from the testimony, it appears that she did not see a doctor until sometime in March. While she claims to have been suffering pain, it cannot be claimed that because thereof she was in any way incompetent because of her injury to transact business. The evidence relative to this matter is wholly insufficient to have justified the court in submitting to the jury the question whether, because of pain from her injury, she was mentally incompetent to realize what she was doing and to execute the release in question. See *Kilby v. Charles City W. R. Co.*, 191 Iowa 926; *Kilmartin v. Chicago, B. & Q. R. Co.*, 137 Iowa 64. She received a check for the $5.00 the next morning through the mail, which check was not cashed until a considerable time thereafter. She was 59 years old at the time of the trial. She had gone to school in Des Moines, and had at least an average education. She had formerly been a nurse, although she had never taken a regular course in nursing. She had also been engaged as a milliner. It is apparent that she was not inexperienced in business affairs. It may be that the plaintiff's injuries were more severe than she thought they were at the time of the signing of Exhibit B, but a settlement is a contract. The fact, if it be a fact, that the settlement does not give her what she now thinks is adequate compensation for her injury does not render the settlement void. See *Taylor v. Chicago, R. I. & P. R.*

*Co.*, 186 Iowa 506; *Seymour v. Chicago & N. W. R. Co.*, 181 Iowa 218. We will give some excerpts from her testimony:

"I didn't read over Exhibit B. There was nothing to hinder my getting my glasses, that I know of. I didn't look the release over. I asked where I was to sign, and he put his finger down, and said, 'Along there,' and that is where I signed. Q. The fact of the matter is, the only reason you didn't read it was because Mr. Ryan had told you that this was just to get medical treatment? A. He told me it was a receipt for the money he was paying me for medical treatment. Q. But otherwise, with that one exception, there was not any reason why you could not read it? A. *No, outside of that, I would have read it.* Q. Your glasses were right there in the house? A. Yes, sir. I can't tell whether Mr. Crum signed Exhibit B without his glasses. I don't think he did. He puts on his glasses when he signs papers. He always wears his glasses when he signs anything. Q. *Then, out there when you signed Exhibit B, Mr. Ryan didn't prevent you from reading it?* A. *No, he didn't.* Q. *You could have read it if you had wanted to then, couldn't you,—Exhibit B?* A. *Why, I suppose I could.*"

The appellant relies upon *Owens v. Norwood-White Coal Co.*, 188 Iowa 1092; *Farwark v. Chicago, M. & St. P. R. Co.*, 202 Iowa 1229; *Stearns v. Chicago, R. I. & P. R. Co.*, 166 Iowa 566; *Kelly v. Chicago, R. I. & P. R. Co.*, 138 Iowa 273; *Reddington v. Blue & Raftery*, 168 Iowa 34; *Platt v. American Cem. P. Co.*, 169 Iowa 330. In all of the aforesaid cases, a settlement as between the employer and the employee was involved. In the instant case, it is a settlement as between the plaintiff and the defendants, through the representative of an insurance company. The plaintiff must have known that she was dealing with the agent of the company at arm's length.

In *Owens v. Norwood-White Coal Co.*, 188 Iowa 1092, the plaintiff relied, not upon a representation as to what the contract of settlement contained, but upon false representations, which induced him to accept what the contract provided for. A reading of the contract of settlement in that case would not have prevented the damage to the plaintiff. The plaintiff in that case was uneducated and inexperienced, and advised not to get a

lawyer. In the instant case, there is no claim made that the plaintiff was advised as against legal advice or counsel.

In *Farwark v. Chicago, M. & St. P. R. Co.*, 202 Iowa 1229, the plaintiff signed a contract of settlement, thinking that he was signing a receipt for wages and expenses until a later period. In that case, no one was present at the time of the signing of the contract, except the plaintiff and the defendant's claim agent, and the plaintiff could not read the English language, and was advised not to get counsel.

In *Stearns v. Chicago, R. I. & P. R. Co.*, 166 Iowa 566, the plaintiff was sorely sick in mind and body.

In *Kelly v. Chicago, R. I. & P. R. Co.*, 138 Iowa 273, the administratrix thought she was settling her own individual claim for $3,000, while she signed a contract or receipt as administratrix for said amount. The claim agent dissuaded her from seeking the advice of counsel, and told her that, if she did so, she would be robbed. The settlement was made very shortly after her husband's death, while she was suffering much in mind from her affliction, and more or less broken physically. Her eyes were swollen, and, being sick and nervous, she could not read the paper which she signed.

In *Reddington v. Blue & Raftery*, 168 Iowa 34, it was the claim of the plaintiff that the amount paid in settlement was paid under a mutual mistake of fact. It has no bearing on the issues in the instant case.

In *Platt v. American Cem. P. Co.*, 169 Iowa 330, the case was allowed to go to the jury on the question as to whether or not the plaintiff was at liberty to deny knowledge of the contents of the paper signed, because of the claims of the plaintiff that, at the time of the execution, he was in an enfeebled condition, confined to his bed, and prostrated and distracted with pain, which was the result of the injury suffered by the plaintiff. There can be no claim in the instant case of mental distraction on this account.

A careful reading of the cases relied upon by the appellant will reveal other facts and circumstances not analogous to the instant case; but, because of the length of this opinion, we will not take the time and space to point them out.

The record herein presents only a case where the party who claims to have been misled as to the terms of a contract by false

representations was able to read, and had ample opportunity to read the release, but omitted to do so. Under the well recognized rule of law in this state, applicable to such cases, this constitutes inexcusable negligence on her part, and estops her from claiming that the contract of release is not binding upon her. Had the case been submitted to the jury, and a verdict returned in favor of the plaintiff, it would have been the duty of the trial court to set the same aside. Under such circumstances, it was the duty of the trial court to sustain the motion for a directed verdict. See *Blossi v. Chicago & N. W. R. Co.,* 144 Iowa 697; *In re Estate of Work,* — Iowa — (233 N. W. 28), and cases therein cited.

The judgment of the trial court is hereby affirmed.— *Affirmed.*

MORLING, C. J., and STEVENS, DE GRAFF, and ALBERT, JJ., concur.