ALETHA MOSHER, Appellant, v. LEROY D. SNYDER et al., Appellees.

No. 44092.

DECEMBER 14, 1937.

Harlan L. Larson and Franklin Jaqua, for appellant.

Miller, Miller & Miller and Frank S. Lovrien, for appellees.

HAMILTON, C. J.—The accident took place on January 2, 1934, on Primary Highway No. 15, about five miles south of Blairsburg, about four or five o'clock in the afternoon. Plaintiff was driving her 1928 Pontiac in a northerly direction. The defendant Leroy D. Snyder was driving a Plymouth sedan owned by Snyder & Johnson, Inc., in the same direction. It was snowing at the time and visibility of the road was impaired by the snow, and it is the claim of the defendant that there was no taillight displayed on plaintiff's car, and as the defendant approached the plaintiff from the rear he was unable to see the car until he was near, and as he pulled to the left to pass, the right front fender of defendant's car came in contact with the left rear wheel of plaintiff's car. Plaintiff was shoved against the steering wheel, and the cushion seat was shoved against her left leg. Snyder claims that he talked to plaintiff and her husband immediately after the accident and that they said no one was hurt. However, she was taken into the office of Dr. H. Pease, who examined and treated her for three days, when she was taken home. No X-ray pictures were taken of the plaintiff. Her condition at the time would indicate that she was in some way injured internally as she was spitting blood and was suffering pain.

Seven days after the injury, a Mr. Hynes, who is an adjuster for the Employers' Mutual Casualty Company of Des Moines, Iowa, in which company the defendants carried a policy

of insurance, called on the plaintiff at her home in Eagle Grove, Iowa, for the purpose of adjusting the damages. As a result of this interview two instruments, known in the record as Exhibits A and B, each designated "Receipt and Release", were executed in what purports to be a full settlement of the damage to the car and also personal injuries. The consideration in one is $50 and in the other $25, and the adjuster paid the plaintiff $75 in full settlement of the loss, out of which, as stated in the release, plaintiff was to pay her own doctor bill. The doctor bill at that time was $20.

No more was heard of this matter until this suit was started on the 19th day of December, 1935, almost two years after the alleged settlement. . The defendants filed their answer on January 16, 1936, ten days after the appearance day, in which answer they denied the allegations of negligence, alleged that the plaintiff was operating her car without displaying a taillight, and in a separate division set up the settlement as an accord and satisfaction by the execution of the receipts and releases. For some reason the case was not brought on for trial and no reply was filed to this answer until nearly a year thereafter. In this reply the plaintiff alleged that the releases were obtained by fraud, that the plaintiff was told by the adjuster that the settlement was only for the damage to the car, that she was in such physical condition because of pain and suffering and the influence of medicine or opiates of some kind that she did not know she was settling the damage pertaining to her personal injuries.

■■■ Appellant predicates her appeal upon two alleged errors: The first relates to the sustaining of an objection to the following question:

"From any conversation that you did have or understand, Mrs. Mosher, with Mr. Hynes or the gentleman there on January 9th, did you understand that these instruments were for the purpose of releasing anything other than the car?" The answer was "No."

The objection followed the answer; the objection being that it was incompetent, irrelevant, and immaterial, calling for the opinion and conclusion of the witness on an ultimate fact, and attempting to avoid the terms of a written instrument by parol evidence, and calling for the opinion and conclusion of the witness. The court sustained the objection. As we view the record

it is not necessary to pass upon this matter, for the record discloses that the witness went into this matter and testified fully in regard thereto.

The second error relates to the action of the court in sustaining the motion to direct a verdict, it being the contention of the appellant that there was a jury question on the issue of fraud in procuring the release and settlement. Appellant invokes the rule announced by this court in Kelly v. Railway Co., 138 Iowa 273, at page 280, 114 N. W. 536, 539, 128 Am. St. Rep. 195, wherein the court said:

"While it is and should always be the policy of the courts to encourage the amicable settlement of all controversies, it is even more a matter of good policy and good morals to stamp the law's disapproval upon settlements which bear the taint of fraud and undue advantage. (Here follows a long list of authorities.)

"Many of the foregoing cases are quite parallel in facts with the case at bar, and all of them emphasize and enforce the proposition that a compromise or release of a right of action obtained by misrepresentation, undue influence, or fraud will be held for naught, and a settlement obtained from one who, by reason of inexperience or weakness of body or mind, or of lack of independent counsel and advice, is not in condition to deal on equal terms with the party seeking the release, will be scrutinized with jealous care, and any contract or agreement thus unfairly obtained will be unhesitatingly avoided."

It is the appellees' contention that the facts in the instant case do not bring it within this class of cases, but on the contrary is ruled by the principle announced by this court in the case of Blossi v. Railway Co., 144 Iowa 697, 123 N. W. 360, 26 L. R. A. (N. S.) 255; Crum v. McCollum, 211 Iowa 319, 233 N. W. 678, 681; Taylor v. Chicago, Rock Island & Pacific Railway Co., 186 Iowa 506, 170 N. W. 388; Seymour v. Chicago & N. W. Railway Co., 181 Iowa 218, 164 N. W. 352.

Appellees also direct the court's attention to appellant's failure to comply with Rule 30 and contend that under the rule announced in Rogers v. Davis, 223 Iowa 373, 272 N. W. 539; Wettengel v. Harrison County Farmers Mutual Fire & Lightning Ins. Assn., 223 Iowa 1, 272 N. W. 435; Luther v. National Investment Co., 222 Iowa 305, 268 N. W. 589; this

court should not consider appellant's assignments of error. No doubt there is such failure on the part of appellant in this respect as to warrant the court in disposing of the case on this ground alone. In the entire brief and argument of the appellant, wherein counsel repeatedly refer to what the evidence shows, in no instance is the page and line of the abstract referred to where such evidence may be found. This is likewise true in the reply brief. If this record were large it can readily be seen that this method of presenting an argument would require the court to either accept the statement of counsel in argument, or read the entire abstract of the evidence and search out that portion thereof which would substantiate counsel's statements in argument. However, the record is short, and a determination of the question presented would in this particular case necessitate the reading of practically the entire abstract of the evidence. We are giving the appellant the benefit of our own research of the record and will permit this case to fall within the rule announced in In Re Estate of Finarty, 219 Iowa 678, 680, 259 N. W. 112, 113, wherein we said:

"The record in this case is so brief and the question at issue so apparent that we do not feel inclined to enforce the rule."

Furthermore, the rule itself is not very plain on this phase of the matter, and apparently counsel for appellant misconstrued the rule or were not acquainted with the procedure and practice in this court in reference to referring to the page and line of the abstract in support of factual matters contained in argument, and we have therefore given consideration to the legal question presented under the second assignment of error, and we are abundantly satisfied that the instant case is governed by the rule announced in Blossi v. Railway Co., supra, and Crum v. McCollum, supra.

The burden rests upon the plaintiff to prove her allegations of fraud and to establish that the plaintiff was in such a physical or mental condition as not to be bound by such settlement. In the case of Rauen v. Insurance Co., 129 Iowa 725, at page 737, 106 N. W. 198, 202, in considering a similar controversy this court said:

"That one who has made a written surrender of a valuable

right, or release of a subsisting cause of action, may repudiate the same upon sufficient showing of fraud or mistake, even where the demand thus released is disputed and unliquidated, is too well established to admit of controversy.'' In the same case it is also announced: ''A grossly inadequate consideration for the release of valuable rights has been held to be in itself an evidence of fraud. * * * A specific intent to defraud need not in all cases be established in order to avoid a release, where the person executing it has in fact been misled as to its meaning and effect.''

In the case of Coffman v. Brenton, 214 Iowa 185, at page 196, 239 N. W. 9, 13, the following principle is announced:

''The settlement having been made, the payment received by appellant, and the written instrument executed by him, the burden of proof rested on the appellant to impeach the transaction by proof of fraud.''

In the case of Owens v. Norwood-White Coal Co., 188 Iowa 1092, at page 1114, 174 N. W. 851, 860, this court, in discussing a matter of this kind, stated:

''In passing upon the question whether a release may be disregarded as having been procured by fraud or mistake or inequitable advantage, it is well settled that evidence is admissible tending to show that the settlement was obtained when the party seeking to avoid it was still suffering from his injury, was sick or distressed, or unnerved and unfit to cope with the other party, or to properly apprehend and protect his legal rights. * * * where such settlements are made with injured and necessitous persons who have not had the aid of counsel, they should be closely scrutinized.''

And in a very recent Iowa case, Engle v. Ungles, 223 Iowa 780, at page 784, 273 N. W. 879, 881, in an opinion by Chief Justice Richards, the cases are carefully reviewed and the particular matters pointed out which distinguish the Engle case and similar cases relied upon by appellant from the rule announced in Crum v. McCollum, supra, relied upon by the appellees. In the Engle case the evidence was such that we held it was a question properly submitted to the jury.

In the instant case, there are no facts sufficient to over-

come the written instruments coupled with the frank, fair, and open statement of the adjuster in reference to the method of making the settlement. This trial did not take place until more than three years after the accident happened. Plaintiff's claim that she was in such pain and discomfort and under the influence of an opiate to such an extent that she was unable to understand the settlement that was being made rests largely on her own testimony, and, as pointed out by the court in his written finding, her testimony is self-contradictory. She first took the witness stand and claimed that she didn't remember signing any papers; that she didn't remember very much about it; she was in such pain and was crying. Later she was recalled for further testimony and she remembered about the settlement and claimed that it only referred to the damage to the car, and she recalled what the adjuster said to her about this. She says she suggested that she perhaps should have counsel before signing the papers, but the adjuster told her he didn't think it was necessary. The opiates she was taking were to alleviate the pain. She says she had just taken one about thirty minutes before, and yet she was suffering intense pain. She remembered that she didn't read the releases and remembered that he did not read them to her. The adjuster said that she took the papers and read them over and said they were O. K. She admits that she could read and that her sister who was there and signed the paper as witness could also read. The husband claims he could not read. There is no evidence in the record of actual fraud or misrepresentation, or that the adjuster made any effort to overpersuade the plaintiff or to mislead her. She makes no explanation as to why she signed two papers when she claims there was only one item covered by the settlement. If we admit the full extent of her injuries as claimed by her, they are not of such character as would ordinarily produce such mental or physical extremity as to render one unfit or incapable of understanding so simple a matter as the adjustment involved here.

The adjuster knew nothing as to the extent of her injuries, except what she told him. He says the only thing she complained of at that time was pain in her chest. The adjuster said she appeared to be in good spirits when he called upon her, and said that she was ready to make the settlement. Her husband and her sister were there at the home the day the settlement was made. She was in bed at the time. The car belonged

to her. It was an old second-hand car for which she paid $175 in 1931. The adjuster asked to see the car, and he was shown the car, and then came back into the house and the settlement was made. Twenty-five dollars of the settlement was to cover damage to the car and $50 was for personal injuries. Her sister says she was hysterical and crying after these instruments were signed. The adjuster's testimony indicates that this condition was the result of a family quarrel which occurred at the same time the settlement was made. The only permanent injury now claimed is with reference to varicose veins in one of her limbs. Dr. Schultz, who was one of the plaintiff's witnesses and who made an examination of her about the time of the trial, but who had never examined her before, gave it as his opinion that these were probably caused by the injury, but said that varicose veins are produced from many different causes. Two other doctors who were not placed on the witness stand gave her treatment for this condition. Dr. Pease testified that he examined her at the time of the accident, and she had at least three fractured ribs and internal injuries, but he could not say what they might be. There is no evidence that he treated her in any way except to give her some pills or opiates. He never saw her from the time she was injured until the day of the trial.

The evidence falls far short of meeting the burden which is cast upon the plaintiff to overcome the written instruments. There is no proof of actual fraud or false representations. There are no means of knowing what the verdict of a jury might have been. The question of the plaintiff's contributory negligence in failing to display a taillight if the jury should so find might defeat her recovery entirely. Under such circumstances it cannot be said that the amount paid is so inadequate as in itself to amount to constructive fraud. And even though settlement were made for an amount which subsequent developments reveal was insufficient to fully compensate for the damage, this does not render the settlement void. Taylor v. C. R. I. & P. Ry., 186 Iowa 506, 170 N. W. 388; Seymour v. C. & N. W. Ry. Co., 181 Iowa 218, 164 N. W. 352; Lumley v. Wabash R. Co. (C. C. A.), 76 Fed. 66. We are abidingly satisfied that the following pronouncement in the case of Crum v. McCollum, supra, rules this case:

"While she claims to have been suffering pain, it cannot be

claimed that because thereof she was in any way incompetent because of her injury to transact business. The evidence relative to this matter is wholly insufficient to have justified the court in submitting to the jury the question whether, because of pain from her injury, she was mentally incompetent to realize what she was doing and to execute the release in question. * * * It may be that the plaintiff's injuries were more severe than she thought they were at the time of the signing of Exhibit B, but a settlement is a contract. The fact, if it be a fact, that the settlement does not give her what she now thinks is adequate compensation for her injury does not render the settlement void.''

We think the trial court was right in directing a verdict. The case is accordingly affirmed.—Affirmed.

ANDERSON, SAGER, STIGER, DONEGAN, RICHARDS, and KINTZINGER, JJ., concur.