No. 18,160.

SABIO CONCIALDI, ET AL. *v*. PUEBLO GAS AND FUEL
COMPANY, ET AL.
(328 P. [2d] 98)

Decided July 14, 1958.

Mr. PHILLIP J. CABIBI, for plaintiffs in error.

Messrs. LEE, BRYANS, KELLY & STANSFIELD, Messrs. ADAMS & GAST, for defendant in error Pueblo Gas and Fuel Company.

Messrs. WOOD, RIS & HAMES, for defendant in error Rocky Mountain Fire Insurance Company and Springfield Fire and Marine Insurance Company.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THE parties hereto, as appropriate, will be referred to either by name or as they appeared in the trial court wherein plaintiffs in error were plaintiffs and defendants in error were defendants.

On December 1, 1948, plaintiffs suffered a loss to business property located at 301 South Union Avenue, Pueblo, Colorado. Investigation disclosed the damage was occasioned by two explosions of gas which had escaped from the Pueblo Gas and Fuel Company's pipe lines. Defendant insurance companies each had previously insured plaintiffs by similar policies in the principal sum of $2,000.00 each for property damage.

Upon receipt of notice of the loss, defendant insurance companies engaged the General Adjustment Bureau, Inc., an independent insurance adjustment firm, to adjust the loss. The latter company through its Pueblo manager sent adjuster Martin Nehring to investigate and secure the necessary forms for settlement. Nehring completed his investigation within a few days but was unsuccessful in securing the signatures of plaintiffs on

the proof of loss forms until nearly sixteen months after the explosions.

In December 1948 plaintiffs were anxious to open a new addition to their place of business and it was the new building that was damaged. The record shows that plaintiffs proceeded to have their property repaired and that final loss figures of $323.94 and $323.95 respectively were used on the Proof of Loss claims filed with the two insurance companies. Nehring testified these figures were arrived at by letting plaintiff Sabio Concialdi proceed to have the repairs done which were necessary for immediate opening of the business; these resulted in a fixed sum, and that he and Sabio Concialdi arrived at an agreed figure for the balance of the work to be done later, which was then added to amounts already paid to arrive at the figures used. Sabio Concialdi testified that the figures used were only those for temporary repairs and that Nehring told him at the time of settlement that plaintiffs could sue the Pueblo Gas and Fuel Company for any additional damages to both the structure and for loss of use. Nehring agreed that he had said plaintiffs could sue for any other losses except to the physical property.

The record discloses that when the proofs of loss were executed plaintiffs also signed (on March 28, 1950) instruments each titled "Loan Receipt" to each of the insurance companies. They were identical except for the names of the companies and the amounts inserted. These were standard forms whereby the sums claimed for damages are to be paid to the insureds as loans and are " . . . repayable only in the event and to the extent of any net recovery . . . " the insureds might receive from any person liable for the loss claimed. In this form the insureds also " . . . pledges to the said 'company' all his, its or their claim or claims . . . " of any of the tortfeasors " . . . and any recovery thereon . . .". Other warranties and statements are made and then the form provides " . . . and (assureds) hereby appoint(s)

the managers and/or agents of the said 'company' and their successors severally, his, its or their agent(s) and attorney(s)-in-fact, with irrevocable power, to collect any such claim or claims, and to begin, prosecute, compromise or withdraw in his, its or their name, but at the expense of the said 'company', any and all legal proceedings that the said 'company' may deem necessary to enforce such claim or claims, and to execute in the name of the undersigned, any documents that may be necessary to carry the same into effect for the purposes of this agreement. Any legal proceedings are to be under the exclusive direction and control of said 'company'."

Following the execution of the proofs of loss and loan receipts the General Adjustment Bureau forwarded these to the defendant insurance companies who issued their respective drafts to plaintiffs for the full amounts claimed. The Rocky Mountain Fire Insurance Company's draft dated April 13, 1950, stated upon its face that the payment provided thereon when " . . . evidenced by proper endorsement hereof, will constitute full satisfaction of all claims and demands for loss and damage by explosion which occurred December 1, 1948 to the property described . . .". On the reverse side thereof is a printed statement below which both plaintiffs signed, which reads:

"In consideration of the sum hereby paid, all claims and demands whatsoever against the Rocky Mountain Fire Insurance Company of Great Falls, Montana, under this policy by reason of the within mentioned claim for loss and damage, are released, settled and forever discharged.
Sign Here
(In Ink)"

Similar but not identical wording appears on the draft issued by defendant Springfield Fire and Marine Insurance Company, also signed by plaintiffs.

Plaintiff Sammie Concialdi testified that he merely endorsed both drafts. Plaintiff Sabio Concialdi testified

that he "examined," endorsed and deposited both drafts. The latter's testimony as to the proofs of loss and loan receipts, however, was that though he had had the opportunity to read those instruments he had not done so.

Defendant insurance companies, based upon the loan receipts and the releases on the drafts, proceeded to arrange a compromise settlement with defendant Pueblo Gas and Fuel Company in the sum of $230.00 each. Each insurance company, as a part of the settlement, furnished an executed general release to the Gas Company. We note that though purporting to release from all claims to property, physical injury or other damage from the explosion, it is not here contended or in issue that more than property damage was meant to be covered by the release terms used.

Several times over the next few years Sabio Concialdi saw Nehring and never raised a question as to the settlement concluded in 1950, nor did plaintiffs make any further demand on the defendants until they filed suit in 1954 claiming damages in the sum of $16,000.00.

The case was tried to the court upon an amended complaint. Eight days before trial and two days before the pre-trial conference plaintiffs moved to file a second amended complaint. This was denied by the trial court after argument and one of plaintiff's grounds urged for reversal is that denial. Since the record before us fails to include the second amended complaint we will not consider that ground. *Hodge v. Terrill,* 123 Colo. 196, 228 P. (2d) 984; *Lambert v. Haskins,* 128 Colo. 433, 263 P. (2d) 433; *Everready Freight Service, Inc. v. Public Utilities Commission,* 131 Colo. 172, 280 P. (2d) 442; *Schleiger v. Schleiger,* 137 Colo. 279, 324 P. (2d) 370. Following the trial the court entered its written findings of fact and judgment for defendants and dispensed with a motion for new trial. Plaintiffs, beside the ground based upon denial of leave to file their sec-

ond amended complaint, which we do not consider, urge for reversal:

(1) That the trial court erred in sustaining defendants' objection to the examination of insurance adjuster Nehring as a managing agent of an adverse party; and

(2) That the court erred in holding that a release to the tortfeasor by the insurer, after the assignment and settlement of the insured's claim, under a loan receipt authority given to the insurer, may be pleaded as a bar to a subsequent action brought by the insured against the tortfeasor.

Plaintiffs first contention is that under R.C.P. Rule 43 (b) Nehring was the managing agent of an adverse party because though " . . . employed by the General Adjustment Bureau he was, nevertheless, acting as a managing agent for the defendant insurance companies." This theory is expounded because Nehring allegedly had the power to act and speak for the companies. The applicable rule provides in pertinent part:

"Rule 43. Evidence.

"(b) Scope of Examination and Cross Examination. " . . . A party may call an adverse party or an officer, director, or managing agent of a public or private corporation or of a partnership or association or body politic which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, . . . .".

■ An adjuster working for an independent contractor engaged in the business of adjusting insurance losses is not within the quoted rule. He is in an entirely different class of employment than the president of the corporation in charge of a branch of a defendants' business who was held to be a "managing agent" within the rule of *London Guarantee & Accident Co. v. Officer,* 78 Colo. 441, 242 Pac. 989, cited by plaintiffs.

Here the record shows the independent nature of the work done by Nehring, a minor employee of a separate

company. He would receive an order from his firm's local manager to investigate an alleged loss; proceed to do so; and secure executed proof of loss forms and sometimes "loan receipts". His report and the forms were then transmitted to his company headquarters, then to the respective insurance carriers who, if they concurred in the report and recommendation of liability, would issue their drafts for payment direct to the insureds. The initial contact was by the insurance carrier (after the insured advised of a loss) engaging Nehring's company to act as outlined for standard charges for services rendered. Nehring never had authority to bind the insurance carriers and was not directly or indirectly under their control or management.

We conclude that the trial court properly sustained the objections to the attempted examination of Nehring under the rule.

■ Plaintiffs cite *Wilson v. Anderson*, 113 Colo. 396, 157 P. (2d) 690, involving a similar loan receipt as authority for their second point which relates to the effect of the releases in question. That case is not authority for the plaintiffs' position here. There no settlement had been made under the ample authority of the loan receipt between the negligent defendant and the insurance company — such as occurred here. Here the loan receipts authorized the settlement made with Pueblo Gas and Fuel Company. The insurance carriers in so acting were plaintiffs' agents and plaintiffs are fully bound by acts done within the scope of the agency.

Until the releases in question were given to Pueblo Gas and Fuel Company for a valid consideration the rights of subrogation under the general rule governing such matters were on a *pro tanto* basis. See 29 Am. Jur. 999, §1335. However, once the power granted has been exercised, there is no subject matter upon which this rule can operate and it cannot apply.

Although it has been held that an advance by an insurer of the amount of insurance to insured under an

agreement reciting that the amount was received as a loan to be repaid only from such recovery as might be had from the other party is not a payment entitling insurer to subrogation. (*Lachenbach v. W. J. McCahan Sugar Refining Co.,* 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170.) This is not such a case. Also it has been held that a mere loan agreement providing for repayment only from recoveries against third parties is not an assignment. 46 C.J.S. 156 § (1) (c). Here the Loan Receipts expressly grant subrogation rights and an express assignment for security. It is well to keep in mind in connection with the Loan Receipts here involved, that subrogation is an equitable right and will be enforced or not according to the dictates of equity and good conscience, 46 C.J.S. 154, §1209 (1) (b), and according to the wording of the instruments involved.

 The plaintiffs' allegation of larger damages than they settled for is immaterial, for plaintiffs may have only one settlement for the physical damage to their building. *Crum v. McCollum,* 211 Iowa 319, 233 N.W. 678. Events subsequent to the execution of the releases to Pueblo Gas and Fuel Company, showing greater damage, cannot be considered in determining the adequacy of consideration for the releases; *Mosher v. Snyder,* 224 Iowa 896, 276 N.W. 582; *Middaugh v. Des Moines Ice & Cold Storage Co.,* 184 Iowa 969, 169 N.W. 395.

In this connection 76 C.J.S. 639, §21, states inter alia:

"While it has been variously stated that a release is valid and binding where the minds of the parties have met and the release has been procured without fraud, misrepresentation, or mistake, that a release may be impeached only for fraud, mistake, or duress, that a release can be avoided only when shown to have been procured by fraud, duress, or oppression or by fraud, undue influence, or mutual mistake, and that, in order to avoid a release, it is necessary to show the mental incapacity of the releasor, it has been held that a release may be avoided for the same reasons as other contracts

and for any cause sufficient in equity to invalidate a contract. In general, a voluntary release obtained without semblance of imposition, for a valuable consideration, from one capable of fully appreciating its full force and effect is valid. The mere fact that a release is extremely comprehensive in terms, and purports to be a complete discharge from all claims arising out of an accident, and is understood as such by the releasor, will not prevent its avoidance where proper grounds therefor exist.

"The validity of a given release depends on the particular facts and circumstances. A release is not invalid because it has been improvidently executed, or because the bargain was unwise or a hard one. A releasor cannot treat a release as valid in part and void in part, affirming it as far as it is for his benefit and disaffirming the part beneficial to the releases. Where a release is invalid, an indemnity provision therein which is an integral part of the same transaction necessarily falls therewith. The validity of a release of a claim or cause of action does not depend on the validity of the claim or cause of action."

■ It was plaintiffs' duty to read and understand the loan receipts and the releases on the drafts given in payment of the damage. It was their duty to withhold the authority granted in the loan receipts if they thought there might be other or additional damage. They proceeded at their peril (and from the facts presented we conclude with adequate time to determine their full losses) and the course of conduct they adopted, now precludes them from effecting the recovery sought.

The judgment is affirmed.

Mr. Justice Day not participating.